71 Pa. Commonwealth Ct. 333 (1983)
Daniel R. Minnick et al.
v.
Zoning Hearing Board, Town of McCandless et al. V.G. Frey, Inc., Appellant.
No. 1844 C.D. 1981.
Commonwealth Court of Pennsylvania.
Argued May 5, 1982.
January 24, 1983.
*334 Argued May 5, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and MacPHAIL, sitting as a panel of three.
Richard P. Jacob, with him William L. Jacob, Jr., William L. Jacob, Jr. and Richard P. Jacob, P.A., for appellant.
Daniel R. Minnick, with him James W. Dunn, Jr., for appellee.
OPINION BY JUDGE WILLIAMS, JR., January 24, 1983:
V.G. Frey, Inc. (Frey) has appealed from the denial of a zoning variance by the Court of Common *335 Pleas of Allegheny County. The trial court's order reversed a decision by the Zoning Hearing Board of the Town of McCandless, which had granted Frey a variance from one of the dimensional requirements of the applicable ordinance.
In a general sense, the variance here in issue relates to a triangular lot that is owned by Frey and which was created by Frey's subdivision of a tract. In a more specific sense, however, the variance is concerned with a house that Frey has already erected on the lot. After Frey had completed the house, the McCandless zoning ordinance was judicially interpreted in a way that put Frey's house in violation of the ordinance's rear-yard requirement. Under those circumstances, Frey was compelled to seek a variance from that requirement, in order to legitimate the house already standing.
In September 1964, Frey obtained approval from McCandless and from Allegheny County for the subdivision and development of a tract of land. In accordance with the approved and recorded subdivision plan, "Greybrooke Plan No. 1," Frey proceeded to divide its tract into a series of building lots, one of which was a triangular or wedge-shaped parcel.
When the Frey subdivision plan was approved in 1964, the then existing McCandless zoning ordinance contained various dimensional restrictions relative to building lots in the area of the Frey tract.[1] Included among those restrictions was a requirement that any house to be erected had to provide for a "rear yard" *336 at least 40 feet deep. It seems, however, that the ordinance did not contain any specific provisions for triangular or other irregularly shaped lots; nor did the ordinance contain any express means of ascertaining what was the "rear yard" of an irregular lot.[2]
In 1971, McCandless enacted a new zoning ordinance, Ordinance No. 587. Under the 1971 ordinance, the Frey subdivision was in a zoning district classified as "R-2," which meant that the area was limited to one-family and two-family residential structures. Among the dimensional restrictions in the new ordinance, insofar as an "R-2" district was concerned, was a retention of the 40 foot "rear yard" requirement. The 1971 ordinance, like its predecessor, contained no specific treatment of irregular lots; nor did the new ordinance express a means of determining the "rear yard" of an irregular lot.[3]
By 1973, Frey had sold all of the lots in its subdivided tract except for the triangular parcel, which had been designated on the plan as "Lot 77." In late 1973 a contractor, with whom Frey had some connection in the building of houses on the lots, proposed to erect a house on Lot 77. The house proposed at that time was to have a front almost parallel to the adjacent street.[4] However, with the house so positioned, the property line directly to the rear of the house *337 would be only 26 feet away; which meant a rear yard significantly less than the 40 feet mandated by the 1971 ordinance.[5] Confronted by those circumstances, the contractor applied for a variance. In December 1973, that application was denied.
In 1976 there was a renewed effort, by Frey, to build a house on the triangular Lot 77. To that end, Frey submitted a new construction plan to the McCandless zoning officer. Frey proposed to erect a two-story, single family home positioned at a sharp angle to the street in front of the lot. By so positioning the house, the rear of the structure would not be pointed directly toward the property line on the northern side of the lot, as did the 1973 construction proposal. Rather, the rear of the structure would now be pointed directly toward the lot's apex in the east. By so positioning the house, Frey sought to create a rear yard consisting of the distance between the apex of the lot and the rear of the house, a distance exceeding the 40 feet mandated by the ordinance. In late September 1976, the McCandless zoning officer granted Frey a building permit to erect the house as proposed.
About September 30, 1976, Daniel R. Minnick, an owner of property adjoining Lot 77, learned that the building permit had been issued to Frey. On October 1, 1976, Minnick and other adjoining property owners went to the zoning officer to review the permit and the plan for the proposed house. Three days later, Minnick and the others sent a letter to the zoning officer and other municipal officials to protest the issuance of the permit. In that letter the protestants complained that the proposed structure would violate the rear-yard size mandated by the zoning ordinance; and *338 they requested that the permit be withdrawn.[6] Frey was made aware of the protest.
In the wake of the opposition to the permit, the zoning officer sought a legal opinion from the McCandless solicitor, who, on October 5, 1976, answered him with a letter stating that the permit was valid under the ordinance. The solicitor's opinion was also communicated to Frey. On October 6, 1976, Minnick observed Frey starting to excavate for the foundation of the house. Minnick immediately contacted the solicitor, and was told that the building permit was validly issued. Two days later, on October 8, 1976, Minnick and the other protesting neighbors appealed to the McCandless Zoning Hearing Board (Board) to contest the issuance of the permit. The protestants also asked the Board to suspend Frey's permit during the pendency of proceedings. That request was denied.
On November 18, 1976, by which time Frey had completed a substantial part of the house, the Board held a hearing on the protestants' appeal. On that same date, the Board entered a decision upholding the issuance of the building permit.
Minnick and his co-protestants appealed the Board's decision to the Court of Common Pleas of Allegheny County. In that appeal, filed on December 16, 1976, the protestants renewed their assertion that Frey's permit was invalid because of the rear-yard provisions in the zoning ordinance.
On March 16, 1977, three months after the protestants had appealed to the Court of Common Pleas, Frey petitioned for leave to intervene. In that petition, Frey averred that it had not received notice of the appeal. At some point after the protestants filed their court appeal, but prior to Frey's petition to intervene, *339 Frey had completed the house on Lot 77. Also, according to Frey, an agreement for the sale of the house had been entered into, and it was the buyer's title report that disclosed the court appeal.[7] The protestants asserted they had given due notice. By an order dated December 23, 1977, the court granted Frey leave to intervene.
On January 4, 1978, the protestants' appeal to Common Pleas was decided by Judge MARION K. FINKELHOR. Without taking additional evidence, Judge FINKELHOR reversed the Board. Although the court observed that the McCandless zoning ordinance of 1971 had no provisions for triangular lots, and that the ordinance contained no guide for ascertaining what was the rear yard of a lot, the court concluded that the zoning officer had erred in issuing the building permit to Frey. In so concluding, Judge FINKELHOR reasoned that the ordinance did not contemplate a "floating" rear lot-line that depended solely on the placement of the house. Judge FINKELHOR held that Frey's proper avenue for relief was to request a variance.
Our Court, following an appeal by Frey, affirmed Judge FINKELHOR'S decision. Minnick v. Zoning Hearing Board, Town of McCandless, 40 Pa. Commonwealth Ct. 31, 396 A.2d 876 (1979). In doing so, our majority opinion construed the zoning ordinance to mean that the rear line of Frey's Lot 77 had to be the property line adjoining the lots on the northerly side of the triangle.[8]Id. at 35, 396 A.2d at 878. Under that *340 interpretation, Frey had built its house without providing a proper rear yard.[9]
In the wake of our decision in Minnick, Frey sought relief from the Zoning Hearing Board of the Town of McCandless. On March 27, 1979, Frey applied to the Board for a variance of 23.54 feet from the 40 foot rear-yard requirement. Given our definition in Minnick of what constituted the actual rear line of Lot 77, the northerly side of the house was only 16.46 feet from the rear line of the parcel. Under our decision, the actual rear yard of Lot 77 was the distance between the northerly side of the house and the northerly property line of the lot; therefore, the house violated the rear-yard requirement by 23.54 feet.
After a hearing relative to Frey's application, the Board entered a decision on May 17, 1979 granting the requested variance. In reaching its decision, the Board concluded that the impact of the McCandless zoning ordinance, as judicially construed, created an unnecessary hardship not of Frey's making. In support of that conclusion, the Board found (1) that Frey had subdivided its tract pursuant to a governmentally approved subdivision plan; (2) that Frey had built its house in reliance on an officially issued and approved building permit; (3) that Frey's problems were caused by deficiencies in the McCandless zoning provisions; and (4) that the lot in question would be virtually useless if the variance was not granted. The Board also found that the variance would not be detrimental to the neighborhood or to the public welfare.
On June 13, 1979, Daniel R. Minnick and other protestants appealed the Board's variance decision to the *341 Court of Common Pleas of Allegheny County. After Frey had been granted leave to intervene in that appeal, the court appointed a referee to take evidence and to submit proposed findings and conclusions.
After hearing the matter in February of 1980, the court-appointed referee concluded that Frey had not demonstrated the existence of an unnecessary hardship, and that, if there was a hardship, it was self-inflicted. In concluding that there was no hardship, the referee found that the triangular Lot 77 did not present any unique physical circumstances. In concluding that any hardship was self-inflicted, the referee pointed to the fact that Lot 77 resulted from Frey's own act of land subdivision, and that Frey had continued with the construction of the house in the face of objections by the protestants. The referee also determined that the variance sought by Frey exceeded the minimum variance needed.
Based on the referee's findings and conclusions, he proposed to the Court of Common Pleas that the Board's decision granting the variance should be reversed. On June 30, 1981, the court, per Judge NICHOLAS P. PAPADAKOS, adopted the referee's findings and conclusions; and thereupon, reversed the Board. From that order, Frey filed the appeal now before us.
In this appeal, the first argument advanced by Frey is that the court below had no legal power to decide the merits of the variance application after the Board had done so. That argument is clearly contrary to the law. Under Section 1010 of the Pennsylvania Municipalities Planning Code,[10] a trial court in a zoning appeal is authorized to take additional evidence. Pennypack Manor Nursing Home, Inc. v. Petrella, 35 Pa. Commonwealth Ct. 367, 387 A.2d 139 (1978). And where, as in the instant case, the trial court does take *342 additional evidence, the court is duty-bound to decide anew the merits of the matter. E.g., Pyzdrowski v. Pittsburgh Board of Adjustment, 437 Pa. 481, 263 A.2d 426 (1970); Porter Appeal, 28 Pa. Commonwealth Ct. 415, 368 A.2d 828 (1977).
Because the trial court did exercise its power to take additional evidence and decide the matter de novo, our scope of review is limited to determining whether the trial court committed an abuse of discretion or an error of law in its decision on the merits. Mont-Bux, Inc. v. Township of Cheltenham, 36 Pa. Commonwealth Ct. 397, 388 A.2d 1106 (1978).
A landowner can establish a right to a variance by showing that the effect of a zoning ordinance is to burden his property with an unnecessary hardship that is unique to his property; that the hardship was not self-inflicted; that the granting of the variance will not have an adverse impact on the public health, safety and welfare; and that the variance sought is the minimum variance that will afford relief. E.g., Marlowe v. Zoning Hearing Board of Haverford Township, 52 Pa. Commonwealth Ct. 224, 415 A.2d 946 (1980). An applicant for a variance can establish the existence of a hardship by showing that the physical or topographical features of the property are such that the property cannot be used for a permitted purpose, or by showing that the property can be arranged for such use only at a prohibitive expense. Id.
Directed to the merits of the case heard below, Frey's central challenges are to (1) the trial court's conclusion that Lot 77 was not faced with a hardship; and (2) the court's conclusion that, if there was such a hardship, it had been created by Frey. Regarding those issues, Frey here argues that the very shape of the lot now presents a hardship, and that the hardship arose from the unforeseeable judicial interpretation of the deficient zoning provisions. Frey points out, *343 moreover, that it created Lot 77 pursuant to a subdivision and development plan that had been approved by the appropriate governmental authorities. In advancing an additional argument for appellate relief, Frey directs our attention to the house now standing on Lot 77. In that respect, Frey points out that it commenced construction of the house pursuant to an officially issued building permit, and asserts that the structure was completed before Frey knew of the 1976 judicial challenge to the permit.
We will address first the argument last mentioned. If the sole consideration in this case was the fact that there is a house now standing on Lot 77, Frey's right to relief would be doubtful at best. If the holder of a building permit acts in reliance thereon before the expiration of the appeal period available to protestants, he proceeds at his own risk; and that is so even if the holder of the permit has expended money or incurred liability in reliance on the permit. Flood v. Zoning Hearing Board of Hampden Township, 19 Pa. Commonwealth Ct. 427, 338 A.2d 789 (1975). In short, the holder of a permit has no vested rights under the permit prior to the expiration of the appeal period available to protestants. Id. The foregoing principle would be consumed if the premature reliance on a building permit could subsequently constitute the basis for a variance. As for Frey's contention that it completed its house without knowing of the judicial challenge to the building permit, the significance of that contention is diminished by precedent: The Pennsylvania Supreme Court has held that the important consideration is whether the beneficiary of zoning action knew or should have known that an appeal could be taken by anyone aggrieved by the zoning action in question. Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 109 A.2d 147 (1954). Regarding the building permit issued in 1976, there is nothing in the record of *344 this case to negate Frey's constructive knowledge of the protestants' right to appeal, both from the original issuance of the permit and from the Board's decision upholding the permit.
If Frey has a right to the variance sought, that right is related, in a significant way, to events that predated the building permit issued in 1976. As we have already stated, Lot 77 was created by Frey in 1964 pursuant to an approved subdivision and development plan. Relying on that approved plan, Frey not only gave Lot 77 its present configuration, but also proceeded to sell the parcels surrounding Lot 77. In other words, Lot 77 became frozen in its present shape and size, with governmental approval, long before there was any authoritative indication that the lot would be subjected to the rear-yard problem here in issue. It is uncontested that, given the configuration of Lot 77, and the judicial interpretation of what constitutes its rear property line, the lot cannot lawfully accommodate a house in the absence of a variance.
We must hold that the lower court erred, as a matter of law, when it concluded that Lot 77 was not faced with a unique and unnecessary hardship. Such a hardship may be said to result when due to the physical characteristics of the property, the permitted use is not possible or is possible only at a prohibitive expense. Holmes v. Zoning Hearing Board of Kennett Township, 39 Pa. Commonwealth Ct. 447, 396 A.2d 859 (1978); Alfano v. Zoning Hearing Board of Marple Township, 14 Pa. Commonwealth Ct. 334, 324 A.2d 851 (1974). Since Lot 77, because of its irregular shape, cannot be developed in conformity with the interpreted rear-yard requirement, the lot must be held to have a hardship.
Based on the fact that Frey itself created the configuration of Lot 77 upon subdividing a tract, the *345 lower court reasoned that, if there was a hardship, it had been self-inflicted and hence precluded the grant of a variance. We disagree with that reasoning as applied to this case.
Prior to the Pennsylvania Municipalities Planning Code (MPC), which was enacted in 1968, an undeveloped lot in an approved subdivision was not immune from changes in zoning requirements. York Township Zoning Board of Adjustment v. Brown, 407 Pa. 649, 182 A.2d 706 (1962); Friendship Builders, Inc. v. West Brandywine Township Zoning Board, 1 Pa. Commonwealth Ct. 25, 271 A.2d 511 (1970). However, under pre-MPC law, if a zoning change inflicted an undue hardship on an undeveloped lot in an approved subdivision, the subdivider-owner could seek to establish his right to a variance or other relief from the new zoning requirement. See York Township Zoning Board of Adjustment v. Brown.
With the advent of Section 508(4) of the MPC,[11] undeveloped lots in an approved subdivision were given a three-year immunity from zoning changes. After the lapse of that three-year period, the subdivider-owner of such a lot would be in the same position as one who never had the protection of Section 508(4). In Re: Application of BCL, Inc., 36 Pa. Commonwealth Ct. 96, 387 A.2d 970 (1978). As to a subdivider-owner in that position, we have held that the remedy is to seek a variance. Bensalem Township Appeal, 47 Pa. Commonwealth Ct. 334, 408 A.2d 550 (1979); In Re: Application of BCL, Inc.
Because Frey's Lot 77 was created in 1964, and hence pursuant to a pre-MPC subdivision, it would seem that Section 508(4) of the MPC never had any application to that lot. However, our decisions under Section 508(4) are relevant to the instant case, in that *346 they define the rights of a subdivider-owner who has no statutory immunity from intervening zoning changes. Having held that such an owner has a right to apply for a variance, we have enunciated in clear terms the principle implied by the Pennsylvania Supreme Court's opinion in York Township Zoning Board of Adjustment v. Brown. Since the subdivider-owner of an undeveloped lot in an approved subdivision has the right to apply for a variance from a post-subdivision zoning change, then it must follow that the right to receive a variance in such circumstances is not defeated by the fact that the applicant created the subdivision. Otherwise, it would be meaningless to say that the subdivider-owner has a right to seek a variance. In sum, if an intervening zoning change results in a legal hardship to a lot in an approved subdivision, the fact that the property owner created the lot cannot be deemed to constitute a self-inflicted hardship as to preclude the granting of a variance from the zoning change.[12] However, assuming that a hardship does exist, there will remain the issues of public detriment and the minimum variance needed.
When Frey created the triangular Lot 77 in 1964, pursuant to the approved subdivision plan, there was no provision in the then existing zoning ordinance that addressed irregular lots. Neither at the time Frey created Lot 77, nor by the time Frey had sold the parcels surrounding Lot 77, was there ever any zoning provision describing how to determine what was the rear yard of an irregularly shaped lot. This is not a case in *347 which a subdivider created a lot in disregard of a clearly formulated dimensional restriction.
Because Frey was given approval to create Lot 77 in its present size and shape, it would be unreasonable, in our view, to charge Frey with having to foresee that the deficient zoning provisions would later be judicially construed as to impose the rear-yard problem here involved. Although that judicial interpretation was not, in an institutional sense, identical to a legislated zoning change, the impact on Frey's Lot 77 was, in the circumstances of this case, the same. In other words, the judicial definition of the rear yard had the same effect on Lot 77 as a legislated zoning change that inflicted a hardship. Consequently, in accordance with what we have already said, Frey's right to a variance cannot be defeated by the fact that Frey created the lot.
As we read the record in this case, it is clear that the variance sought by Frey will not have an adverse impact on the public health, safety and welfare. In that respect, it should be reiterated that the purpose of the variance is to allow for a single-family dwelling on Lot 77, which is the very use for which the property is zoned. As an additional matter, it is our view that the variance sought by Frey does not exceed the minimum needed to afford relief.
For the reasons set forth in this opinion, it is our conclusion that appellant Frey was entitled to the variance sought; and we must reverse the lower court's order to the contrary.

ORDER
AND NOW, the 24th day of January, 1983, the order of the Court of Common Pleas of Allegheny County dated June 30, 1981, at No. S.A. 601 of 1979, is hereby reversed.
NOTES
[1] When Frey subdivided its tract in 1964, the governing ordinance was one that had been enacted in 1947 by the Township of McCandless. By the time Frey sought the variance here in question, and indeed for some time prior thereto, the governing ordinance was an enactment by the Town of McCandless. Accordingly, the term "McCandless," as used in this opinion to refer to the municipality involved, will have an alternating meaning.
[2] The ordinance in effect in 1964, when Frey subdivided its tract, defined a "rear yard" as follows: "A yard across the full width of the lot extending from the rear line of the building to the rear line of the lot, exclusive of open porches and permitted accessory uses or buildings."
[3] The 1971 ordinance stated that: "`Rear yard' means a yard extending across the full width of the lot and abutting the rear lot line, the required depth of which yard is a prescribed minimum distance between the rear lot line and the rear building line."
[4] Although the house proposed in 1973 was to have a front that was more or less parallel to the street abutting the triangular lot, the street itself gave the lot a base with an acute angle.
[5] It should be noted that Lot 77, and all the other lots in Frey's "Greybrooke Plan No. 1," exceeded the minimum lot-size requirements of the "R-2" district.
[6] All of the protestants are the owners of lots created pursuant to Frey's "Greybrooke Plan No. 1."
[7] Frey was to testify later that the "cloud" created by the 1976 court appeal required the building of another house for the purchaser.
[8] Lots 74, 75 and 76 on the subdivision plan. The owners of those lots are among the protestants in this case. Frey has made no issue from the fact that the lots of all the protestants were purchased out of the same subdivision plan that included Lot 77.
[9] Shortly before our decision in Minnick, the Town of McCandless supplemented its zoning ordinance with diagrams of how to determine the rear yard for various types of lots. There were diagrams not only for triangular and other irregularly shaped lots, there was also a diagram for an ordinary rectangular lot.
[10] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 11010.
[11] 53 P.S. § 10508(4).
[12] Of course, if the owner of the lot in question also owns adjacent vacant land that can be merged as to eliminate the zoning problem, then no hardship exists to form the basis for a variance. E.g., Berger v. Zoning Hearing Board of Cheltenham Township, 54 Pa. Commonwealth Ct. 405, 422 A.2d 219 (1980); Ephross v. Solebury Township Zoning Hearing Board, 25 Pa. Commonwealth Ct. 140, 359 A.2d 182 (1976).