## Utility Constructors, Inc. v.
## Sadsbury Township Supervisors

*Paul D. Shafer, Jr., Charles J. Swick,* for plaintiffs.
*R. Charles Thomas,* for defendant Sadsbury Township.
*John Spartaro,* for Sadsbury Township Board of Appeals.
*E. May Weiss,* for defendant Conneaut Lake Homeowners Association, Huidekoper Bay Park, Inc., Huidekoper Residents Association and Alfred W. DeCapua.

THOMAS, *P.J.,* March 20, 1984—This matter is before the court on an appeal by appellant, Utility Constructors, Inc., Clairmont Summers and Lynn Summers (hereafter Utility), from the decision of the Sadsbury Township Zoning Hearing Board, which declared Sadsbury Township Ordinance Number 139-1981 to be substantively unconstitutional. Utility contends that the decision of the board was an abuse of discretion, in that the board's decision was not substantiated by credible evidence or findings of fact. This court received additional evidence under Section 11010 of the Pennsylvania Municipalities Planning Code (53 P.S. §11010), on

September 8, 1983, which consisted of the testimony of Richard Miller, a township supervisor, and Alfred DeCapua, President of the area Homeowners Association, plus additional exhibits. We will consider this evidence along with the opinion of the zoning hearing board and the record that was available to the zoning hearing board at its March 30, 1983 hearing. The record available to the zoning hearing board for review consisted of 28 exhibits submitted on behalf of appellees (hereafter Homeowners) and two large scale zoning use maps depicting the parcel at issue and its immediate neighborhood, both before and after the rezoning. (Exhibits 1 and 2) This court will review the question of substantive constitutionality de novo. "And where, . . . the trial court does take additional evidence, the Court is duty bound to decide anew the merits of the matter." Minnick, et al, v. Z.H.B., Tn. of McCandless, 71 Pa. Commw. 333, 342, 455 A.2d 243, (1983).

We previously heard this case in another posture when Utility appealed the refusal of the Sadsbury Township Zoning Hearing Board to grant Utility a permit to operate a travel trailer park on the rezoned land as a special exception use. Sadsbury Township had rezoned this 87 acre parcel from general commercial and seasonal residential to resort commercial on June 17, 1981 (Ordinance No. 139-1981), thus permitting travel trailer parks to be established on the land as a tightly controlled special use exception. The matter was vigorously contested by area homeowners and their associations. The zoning hearing board refused to issue a permit for Utility to operate a travel trailer park and this decision was appealed and relitigated before this court in Utility Constructors, Inc., vs. The Zoning Hearing Board of

Sadsbury Twp., et al, — 1981-119. On August 4, 1982, we filed a lenghtly opinion and order overruling the hearing board's refusal to issue the permit. Homeowners appealed our decision and on February 28, 1984 the Commonwealth Court (Crumlish, Barbieri and Barry) determined we correctly resolved the issue and affirmed our decision. (No. 2148 C.D. 1982)

Homeowners in this case are focusing their attack on the basic validity of Township Ordinance 139-1981 under which travel parks are conditionally permitted. We must therefore determine whether or not the Sadsbury Township Supervisors have committed an error of law or abused their legislative discretion in adopting Ordinance 139.

## FACTUAL BACKGROUND

Ordinance 139 amended the township zoning ordinance by changing the zoning classification of an 87 acre undeveloped parcel bordering Conneaut Lake owned by Utility from a 25 percent general commercial classification, and 75 percent seasonal residential classification to an entirely resort commercial classification. Most of this parcel is poorly drained with corridors of soil that are subject to flooding. The parcel is irregular in shape and is bounded on the west by 1,370 feet of frontage on Route 618. The northern boundary runs along what is termed State Ditch and which separates this parcel from the wetlands immediately north of the parcel with a small parcel of general commercial land along Route 618. Pymatuning Avenue, Farm Road and the John Harned residential allotment form the southern boundary. The east boundary is a 575 foot stretch of Conneaut Lake shore line.

The western boundary of this parcel along Route 618 is adjacent to a resort commercial and suburban residential district lying across the highway. The southerly boundary is adjacent to an existing general industrial and seasonal residential district. (See Exhibits 1 and 2 — before and after zoning maps)

## STANDING

Our fist concern is to determine whether Homeowners had the requisite standing under 53 P.S. §11005 of the Municipalities Planning Code to substantively challenge the validity of Ordinance 139-1981. Utility argues that Homeowners were not "persons aggrieved" under Section 11005 of the Code. Section 11005 states that the person "attempting the challenge" must be "aggrieved by a use or development permitted on the land of another. . . ." In the instant case, Utility has been issued a special use permit which allows it to develop a travel trailer park on the rezoned parcel. "A necessary pre-condition to the substantive challenge of an ordinance is the existence of a specific use to which the property is sought to be developed." Pheasant Run Civic Org. Appeal, 60 Pa. Commw. 216, 430 A.2d 1231, (1981). Homeowners have established that members of their organizations own property in Sadsbury Township and some of these members own property in the seasonal residential neighborhood immediately south of the subject parcel. "Appellant's status as a landowner, by virtue of his legal ownership of a neighboring property, is not an impediment to his standing to challenge, but rather qualified him as a "person aggrieved" within the intendment of the MPC." Seeherman v. Wilkes-Barre City Zoning Hearing Board, 42 Pa. Commw.

175, 400 A.2d 1334, 1336 (1979). We find Homeowners have standing to challenge the validity of the ordinance.

## CONSTITUTIONALITY OF THE ORDINANCE

"A reviewing court when faced with a challenge to a zoning measure must be mindful of certain basic principles. First, a Court must presume the zoning ordinance is valid and constitutional and the burden of proving otherwise is on the challenging party. . . . Moreover, before a Court may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions are arbitrary and unreasonable and have no relation to the public health, safety and morals and general welfare and if the validity is debatable, the legislative judgment is allowed to control." Schubach v. Silver, 461 Pa. 336, 380-81, 336 A.2d 328, (1975).

The first issue we will confront is the contention of Homeowners that Ordinance Number 139-1981 was not enacted for the purpose of classification of the subject parcel to resort commercial for general zoning purposes; but rather, for the sole purpose of giving the landowner the opportunity to apply for a special exception permit to develop a travel trailer park. In support of this contention Homeowners attempted to demonstrate that the board of supervisors did not give due consideration to the other allowable uses permitted in a resort commercial district. Our review of the record indicates that many of the shortcomings of both the use proposed by Utility as a travel trailer park under a resort commercial classification and other possible uses under a resort commercial classification were pointed out to the supervisors prior to their adoption of this ordi-

nance. We note also that the supervisors were repeatedly made aware of the consequences of their change in the proceedings before them in the prior case involving this issue as previously noted.

At the September 8, 1983 hearing, we heard the testimony of Mr. Richard Miller, who has been a Sadsbury Township supervisor since 1976 and was chairman of the board at the time the ordinance was passed. Miller testified that the board had considered other possible uses allowed under the resort commercial classification that were different from the proposed travel trailer park Utility intended to develop. Miller further testified that the board also took other considerations into account, including the fact that the subject parcel adjoined resort commercial lands and the rezoning would be an inoffensive expansion of these already existing districts. The board also felt that some of the low wetland of the parcel was not conducive to a single family residential, which is the predominent housing in a seasonal residential district. The board had considered the recommendation of the Crawford County Planning Commission that a change be made, and in the board's judgment this change would be an improvement for the township and a very good use of the land. "What serves the public interest is primarily a question for the appropriate legislative body in a given situation to ponder and decide." Bilbar Construction Company v. East Town Board of Adjustment, 393 Pa. 62, 141 A.2d 851 (1958).

We recognize that the board was aware Utility intended to apply for a permit to develop a travel trailer park if the subject parcel was rezoned to resort commercial. We do not believe that a known *proposed* use of the area from among many uses au-

thorized if rezoning is enacted, standing alone, negates the sound discretion of the supervisors in adopting the zoning change. The testimony of Miller persuades us to conclude that the board of supervisors was in favor of rezoning to resort commercial as a measure intended to benefit the township as a whole. We believe this to be a sound legislative determination which the supervisors determined was not adverse to the surrounding neighborhoods. This is especially true where many of the commercial uses permitted in a resort commercial district were also permitted under the former seasonal residential district classification. We note, as did the supervisors, that the western and southwestern boundaries of this parcel are adjacent to general commercial and resort commercial zones. At the September 8, 1983 hearing, we heard the testimony of Alfred DeCapua, of Aldina Drive, who is a party to this law suit and President of the Conneaut Lake Homeowners Association. DeCapua testified that in his opinion as a real estate appraiser, this rezoning would have an adverse effect on the property values in the area. No concrete evidence was offered in support of DeCapua's testimony and nothing in the records demonstrates this adverse effect or its potential extent. We accordingly cannot find that the provisions of this ordinance demonstrate an unreasonable or arbitrary abuse of discretion by the supervisors in their application to the subject parcel nor in their effect on surrounding land.

The zoning amendment was enacted after due consideration by the board and an exhaustive exposure to the advantages and disadvantages of the proposal and was in promotion of the health, safety, morals and general welfare of the township.

## SPOT ZONING

The final challenge to the validity of the ordinance is that it is in reality spot zoning. The Zoning Hearing Board of Sadsbury Township has concluded that enactment of the ordinance constitutes spot zoning and as such is unconstitutional. What constitutes spot zoning at times defies precise definition. In Porter Appeal, 28 Pa. Commw. 415, 368 A.2d 828, (1977), our Commonwealth Court noted:

". . . Spot zoning, a form of discriminatory zoning, has been defined as "[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment. . . ." Mulac Appeal, 418 Pa. 207, 210, 210 A.2d 275, 277 (1965). In Mulac Appeal, our Supreme Court noted that there is no formula which can be applied with mathematical certainty to determine whether a particular situation constitutes spot zoning. The court went on to state:

"Clearly, the size of the property involved is only one of the determining factors. What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an 'island' having no relevant differences from its neighbors. Id. at 210, 210 A.2d at 277. This Court has mentioned topography, location, and characteristics of the tract as factors which may be taken into account. Pollock v. Zoning Board of Adjustment, 20 Pa. Commonwealth Ct. 641, 342 A.2d 815 (1975). We have been cautioned by the Supreme Court, however, not to limit our inquiry to the mere physical aspect and characteristics of the land, but also to consider how the rezoning affects the public health, safety, morals, and general welfare and how

it relates to the township's comprehensive plan. Schubach v. Silver, 461 Pa. 366, 382-83 n. 14, 336 A.2d 328, 336 n. 14 (1975). These factors, when assessed, must clearly indicate that a zoning ordinance is arbitrary and unreasonable and has no substantial relation to the general welfare of the public. If the validity of the legislation is fairly debatable, the legislative judgment must be allowed to control. . . ."

Our initial inquiry is to determine how dissimilar this subject parcel is from surrounding land. The large size of this eighty-seven acre parcel is a major factor to be considered. It is not surrounded by any homogenous zoning classification or use, but rather borders on differing zoning classifications as well as a conservation wetland. The 575 feet of shore line is apparently similar to the shore line of the seasonal residential neighborhood to the south. The bulk of the parcel covers a low lying area away from the Conneaut Lake shore and the parcel does have good highway access to Route 618. Based on size alone it seems more appropriate to characterize this parcel as a continent of itself rather than an "island of spot zoning" having no relevant differences from its neighbors. Based on the differing zoning characters of the surrounding land, we can find no "uniform sea" which encircles this parcel.

The second inquiry is whether this parcel is being singled out for treatment unjustifiably different from that of surrounding land. We note that this is an undeveloped tract of land and the resort commercial classification permits all of the commercial uses allowed in the former seasonal residential classification, but also allows even more types of development which the board of supervisors judged would be an economic improvement for the town-

ship as a whole. This parcel is not quite the same as the land surrounding it and its treatment is not wholly different from that of some of the surrounding land. The board apparently felt rezoning was justifiable in light of the topography, location and individual characteristics of the subject parcel and we cannot classify the supervisors' discretion in this regard as unconstitutional spot zoning.

## NON-COMPLIANCE WITH REGIONAL OR COMPREHENSIVE PLAN

As in the prior case, the Homeowners herein raise the argument that the zoning change does not comport with a long-range regional plan adopted some 15 years ago.

We readopt our observation on this issue made in our prior opinion:

"Comprehensive long-range regional plans are not trueisms engraved in stone that are so brilliant in their original conception that they are immune to change for all time. If in the judgment of the Supervisors, a zoning plan created many years ago needs amendment in view of new needs, changing recreational patterns or innovative development, they have the right and duty to make zoning changes to meet current needs. . . .

"Our Commonwealth Court has held that a comprehensive plan does not have the legal effect of a zoning ordinance; the former is recommendary and only the latter is regulatory. Saenger v. Berks County, 9 Pa. Commonwealth 499, 308 A.2d 175 (1973).

"A Comprehensive Plan . . . need not and indeed should not be required to fix the zoning map of the township in a rigid and immutable mold." Furniss v. Lower Merion Township," 412 Pa. 404, 194 A.2d 926 (1963).

Our review of the record discloses that the Conneaut Lake shore has already been generally developed as a seasonal residential area. The Comprehensive Plan also recognizes that the Conneaut Lake area has an economy based partly on tourism and resort recreation. The rezoning by the supervisors is not inconsistent with this recognition and is obviously in anticipation of future tourism. Further, the northwest end of Conneaut Lake where the subject parcel is located is already zoned predominately resort commercial. The supervisors undoubtedly felt that the rezoning of this parcel is merely a continuation of an already existing resort commercial district into an area not ideally suited to residential development. While the nearby homeowners find the expansion of the resort commercial area into their neighborhood distasteful, we cannot find that this discretionary decision by the supervisors is so arbitrary, capricious and inimical to the health, welfare and safety of the township as to require its invalidation on constitutional grounds. This zoning issue comes before the court for review of the discretion of elected public officials — not to accord the judicial branch the opportunity to substitute its discretion for that of elected township officials. It is only when that discretion is so lacking in logic, common sense and reasonableness in the totality of circumstances, that the court is justified in setting aside a legislative action of the supervisors who are the elected representatives of the people most vitally affected.

For the foregoing reasons we must reverse the decision of the zoning hearing board.

## ORDER

And now, this March 20, 1984, we find ordinance number 139-1981 to be a valid and reasonable exer-

cise of the township's power to regulate land use and is in furtherance of its legitimate concern for the public welfare. The opinion of the Sadsbury Township Zoning Hearing Board declaring this ordinance to be unconstitutional and invalid is hereby reversed.