Catherine Marlowe and Manoa Merchants' Association, Appellants *v.* The Zoning Hearing Board of Haverford Township, Chad Partnership and Strawbridge and Clothier, Appellees.

Argued February 8, 1980, before Judges ROGERS, MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Joseph A. Damico*, with him *John W. Wellman* and *Steven G. Brown, Petrikin, Wellman, Damico & Carney*, for appellants.

*Brian S. Quinn*, for appellee, The Zoning Hearing Board of Haverford Township.

*Henry B. FitzPatrick*, with him *Marcy B. Tanker*, for appellee, Chad Partnership.

*Murray S. Eckell*, for appellee, Strawbridge and Clothier.

OPINION BY JUDGE WILLIAMS, JR., June 18, 1980:

Before us in this litigation are two companion appeals arising from a single zoning case, together with separate motions to quash each of those appeals. All of these matters were consolidated for argument and disposition. The first appeal (No. 1965 C.D. 1979) is by Catherine Marlowe and Manoa Merchants' Association (Manoa) from an order of the Court of Common Pleas of Delaware County affirming the grant of zoning variances by the Zoning Hearing Board of Haverford Township (Board).

The second appeal (No. 2340 C.D. 1979) is by the same appellants from a separate order of that same lower court granting the motion of Chad Partnership (Chad) and Strawbridge and Clothier to require the posting of a bond, as a condition for further appeal to this Court from the affirmance of the Board's decision. Chad is the equitable owner of the land in question and Strawbridge and Clothier its principal ten-

ant. Those parties had intervened as appellees when Manoa appealed the Board's decision to the lower court.

The intervenor-appellees, Chad and Strawbridge and Clothier, have filed in this Court motions to quash each one of Manoa's appeals. They seek to quash the appeal from the bond order on the ground that it is an interlocutory and not a final, appealable order. They also seek to quash the appeal from the affirmance of the Board's decision, because the appellants failed to post the bond which the lower court made a condition of further appeal.

We take first the issue of the bond order, because if the appellees are correct in their contentions based on that order, it would dispose of the matters before us. However, the appellants assert that the lower court had no jurisdiction to enter the bond order because that order and the motion upon which it was granted came after the appellants had perfected their initial appeal to this Court, that is, from the lower court's order affirming the Board.

When Manoa first appealed to the court below from the decision of the Board, the intervenor-appellees filed a motion to require the posting of an appeal bond. On June 29, 1979 the lower court denied that motion. On August 30, 1979 the lower court affirmed the Board's decision granting the variances and dismissed Manoa's appeal. On September 19, 1979 Manoa appealed that order to this Court. Five days later, on September 24, 1979, the intervenor-appellees again filed a motion for an appeal bond. On October 15, 1979 the lower court granted the motion and ordered the posting of a bond.

It is a well established general rule that after an appeal the lower court may no longer proceed in the matter. *Grove v. Zoning Hearing Board of Thornbury Township,* 40 Pa. Commonwealth Ct. 47, 397 A.2d 22

(1979). With a few exceptions not here relevant, that principle has been codified in the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1701(a). From this, we are pointed to the conclusion that the lower court had no legal power to enter the bond order, as it came after the appeal had been taken to this Court.

The appellees assert that the lower court had the power to enter such an order even after the filing of the appeal, by virtue of Section 1008(4) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11008(4) (MPC). That provision does create an additional, specialized exception to the general rule preventing lower court action after an appeal. That provision gives a landowner in a zoning case the right to petition the lower court to require the posting of a bond after an appeal has been taken from a final decision of the lower court.

However, Section 1008(4) of the MPC permits such a petition only under a given circumstance: where the landowner had previously waived the right to compel the posting of a bond when the protestants first appealed to the lower court from the zoning decision. In such a case the Section permits him to revoke the waiver if the protestants appeal further. In the case at bar, the intervenor-appellees did not *waive* their right to seek the imposition of a bond. They filed a motion to compel the posting of a bond when Manoa first appealed to the lower court; and that motion was denied.

If no bond had been required by the time Manoa filed its initial appeal to the Commonwealth Court, on September 19, 1979, it was not because the appeal bond had been *waived,* but because the motion for such a bond had been denied by the lower court. Accordingly, the intervenor-appellees did not come within the MPC exception or any other exception to the rule set forth

in the *Grove* case, *supra*. Therefore, the motion to quash Manoa's appeal from the bond order must be dismissed; and the lower court's order requiring the posting of the bond must be reversed, because the lower court had no legal power to enter such an order after Manoa had taken its appeal to this Court.[1] For that reason, we must also dismiss the motion to quash the main appeal, that from the affirmance of the Board's decision to grant the variance to Chad. We must now address ourselves to the merits of that appeal.

Chad Partnership is the equitable owner of an 8.91 acre parcel of land at Township Line Road and Darby Road in Haverford Township, Delaware County. The parcel is zoned for a shopping center. Chad proposed to erect a shopping center on the site; and the principal feature would be a department store operated by lessee Strawbridge and Clothier. In August 1978, Chad applied to the Zoning Hearing Board of Haverford Township for seven variances from the dimensional, bulk, and parking requirments of the Township's zoning ordinance. Chad alleged that due to the physical and topographical features of its land, the variances were necessary to permit development of the site as a shopping center, the use permitted by the zoning ordinance.

The seven variances sought were as follows:

1. reduce the required front set-back from public street West Chester Pike from 100 feet to 90 feet.

---

[1] An order requiring the posting of a bond in a zoning case has been held to be interlocutory and not appealable. *E.g., In Re: Appeal of Gilbert*, 34 Pa. Commonwealth Ct. 299, 383 A.2d 556 (1978). However, where that rule has been applied the bond order was entered while the lower court still had jurisdiction over the matter, as a condition to appealing to the zoning hearing board or as a condition to appealing to the lower court from the board. The rule should not apply where the order is entered by a lower court which no longer has jurisdiction over the case.

2. reduce the required set-back from the rear property line from 70 feet to 37 feet at the nearest point.

3. permit the proposed building to cover 21.9% of the parcel, whereas the ordinance restricted coverage to 20%.

4. permit 5.0 parking spaces per 1000 square feet of gross leasable space, whereas the ordinance required 7.0 spaces per 1000 square feet.

5. permit parking spaces to be erected within 20 feet of Township Line Road and West Chester Pike, whereas the ordinance prohibited parking spaces within 20 feet of the right-of-way of a public street.

6. permit parking spaces within 20 feet of the westerly boundary line of property owned by Philadelphia Electric Company, whereas the ordinance prohibited parking spaces within 20 feet of a boundary line.

7. permit the parking spaces to be 9 x 20 feet in size instead of the required 10 x 20 feet.

The Board found that the size, shape and placement of the proposed building was directly related to the physical conditions of the parcel and were required to insure reasonable use of the property as a shopping center. In granting the requested variances, the Board found that the zoning requirement created an unnecessary hardship, and that the hardship was not self-inflicted by Chad but was due to the unique physical features of the parcel. The Board also found that the sought variances were minor and would not adversely affect the public health, safety and welfare. Without taking additional evidence, the lower court affirmed the Board's decision over an appeal by Manoa.

Appellant Manoa is an association of merchants who own or operate retail stores in the vicinity of Chad's proposed shopping center. Appellant Catherine Marlowe, while a resident of Haverford Town-

ship, is also employed by one of the member merchants of Manoa; and it appears that she entered her name in this matter at the initiation of her employer.

The appellants contend that the variances should not have been granted, for the following reasons: (1) that the variances were so "massive" as to constitute re-zoning; (2) that the hardship was self-inflicted; and (3) that Chad had other land available to it which would obviate any need for the variances.

Since the lower court took no additional evidence our scope of review is restricted to whether the board abused its discretion or committed an error of law. *E.G., Holmes v. Zoning Hearing Board of Kennett Township,* 39 Pa. Commonwealth Ct. 447, 396 A.2d 859 (1978). It is our conclusion that the Board's decision in this case suffers from neither defect.

The evidence shows that the parcel in question is about 1000 feet in length and about 380 feet wide on its eastern boundary. However, the width is only 233 feet on the western boundary due to the angle of a public road, West Chester Pike. At its widest interior point the parcel is 345 feet across.[2] The grade drops in elevation approximately 6 to 8 feet into the site from West Chester Pike. From the northern side of the parcel to another side on the east there is an elevation variant of about 24 feet. Other physical features of the land include a sewer easement traversing the southeast portion and a creek running along the southern boundary. In fact, it appears that the creek is the southern boundary.

A landowner can establish a right to a variance by showing that the effect of the zoning ordinance is to

---

[2] The parcel has an irregular configuration. The northern boundary is not a straight line running from east to west; and the westerly half of the property is considerably narrower than the eastern half. That is because the western half of the northern boundary line is abutted by West Chester Pike, which angles to the southwest.

burden his property with an unnecessary hardship which is unique to his property, that the granting of the variance will not have an adverse impact on the public health, safety and welfare, that the hardship is not self-inflicted, and that the variance sought is the minimum variance that will afford relief. *Grace Building Co. v. Zoning Hearing Board of Upper Merion Township,* 38 Pa. Commonwealth Ct. 178, 392 A.2d 888 (1978). An applicant for a variance can establish the existence of such a hardship by showing that the physical or topographical features of the property are such that it cannot be used for the permitted purpose or that the physical features are such that the property can be arranged for such use only at a prohibitive expense. *Alfano v. Zoning Hearing Board of Marple Township,* 14 Pa. Commonwealth Ct. 334, 324 A.2d 851 (1974).

The evidence supports the Board's finding that Chad's parcel had unique physical or topographical features that imposed severe constraints on the development of the property as a shopping center, its permitted use. Also supported by the evidence is the Board's finding that the size, shape and placement of the proposed structure are directly related to the constraints imposed by the physical features of the land. There was also evidence sufficient to show that for a shopping center the parking spaces must be located in a certain relation to the structure; that is, the parking spaces cannot be too remote. Since a significant part of Chad's land is of a sloping nature and cannot be used for parking spaces, it was not erroneous for the Board to consider the parking space requirement also as a hardship created by the physical features of the land. Therefore, it cannot be deemed an abuse of discretion for the Board to reduce the required number and size of parking spaces to account for the physical constraints. In sum, the Board could appropriately

conclude that the same physical or topographical constraints that influenced the size, shape and placement of the shopping center structure itself also reduced the number of parking spaces that could be installed within reasonable proximity to the structure.

The appellants contend that the hardship relied upon by Chad was self-inflicted because Chad was aware of the land's features and the zoning requirements before purchasing the parcel. However, the mere fact that an applicant for a variance purchased the property with knowledge of the hardship does not alone preclude him from being granted the variance. *Gro Appeal,* 440 Pa. 552, 269 A.2d 876 (1970); *Franklin Towne Realty, Inc. v. Zoning Hearing Board of Borough of Franklin Park,* 37 Pa. Commonwealth Ct. 632, 391 A.2d 63 (1978); *Harper v. Ridley Township Zoning Hearing Board,* 21 Pa. Commonwealth Ct. 93, 343 A.2d 381 (1975).[3]

The mere fact that property changes hands after the adoption of zoning cannot be the basis for holding that no variance can thereafter be granted with respect to any matter of which the purchaser could be aware. *Zoning Hearing Board of Bensalem Township v. Grace Building Co.,* 39 Pa. Commonwealth Ct. 552, 395 A.2d 1049 (1979). Because zoning considerations relate primarily to the circumstances of the property and not to the identity of the owners, it would seem that a subsequent purchaser can stand in the shoes of the original owner with respect to a variance, provided that the claimed hardship does not arise out of the purchase itself. *Id.*

With respect to a landowner who purchases with knowledge of the property's condition and existing

---

[3] The "awareness" rule had been more broadly stated in other cases; however the controlling principle is stated in *Gro Appeal, supra,* in which the Pennsylvania Supreme Court restricted the application of the rule.

zoning restrictions, the hardship is deemed self-inflicted only where he has paid an unduly high price because he assumed the anticipated variance would justify the price, or where the size and shape of the parcel was affected by the transaction itself. *Harper v. Ridley Township Zoning Hearing Board, supra.* In the case at bar, there is nothing to indicate the presence of either of these factors.

The appellants finally contend that the variances should not have been granted because there was additional abutting land that Chad could obtain to eliminate any need for variances. However, this Court has held that the availability of additional land is not a consideration in determining whether a hardship exists as to a given parcel. *Grace Building Co. v. Hatfield Township,* 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974); *Durkin Contracting Co. v. Zoning Hearing Board of Adjustment,* 6 Pa. Commonwealth Ct. 211, 293 A.2d 622 (1972).

The appellants point out that Chad's 8.91 acre parcel was carved out of a 10.807 acre tract owned by Philadelphia Electric Company. They stress that Philadelphia Electric is a partner in Chad and yet still retains the remaining 1.9 acres in separate ownership. From this the appellants argue that Chad could purchase, or could have purchased, the remaining 1.9 acres to eliminate the hardship. However, there was sufficient evidence to establish that Chad purchased as much of the tract as Philadelphia Electric could sell and still retain enough land for a proposed power substation, which, presumptively, will serve the power needs of the public. In sum, the evidence supports a conclusion that there was not other available adjacent land, even if that were a relevant consideration in determining whether a hardship exists. Given the evidence as to the planned use of the remaining 1.9 acres still owned by Philadelphia Electric, we need not

under the circumstances raise inquiry as to the inter-relationship between purchaser Chad and subdivider Philadelphia Electric, or as to the significance of their ostensibly distinct legal identities. If the remaining 1.9 acres held by Philadelphia Electric had not been reserved for public utility purposes, the nature of the relationship between the two entities could have become a more important issue. That is because of a basic principle of zoning law: where an owner subdivides his property into two separate parcels, one of which cannot be developed in accordance with zoning requirements, then he is not entitled to a variance for that parcel, because the hardship has been self-induced. *E.G., Zoning Hearing Board of Upper Chichester Township v. Petrosky,* 26 Pa. Commonwealth Ct. 614, 365 A.2d 184 (1976).[4] The same rule has been applied where two adjoining undeveloped lots are controlled by the same entity. *In Re: Application of BCL, Inc.,* 36 Pa. Commonwealth Ct. 96, 387 A.2d 970 (1978).

However, on the record evidence in the instant case we cannot say that the Board committed abuse or error in granting the variances, even on traditional grounds. As an additional basis for granting the variances the Board determined that they were minor or "de minimis". In the case of *West Bradford Township v. Evans,* 35 Pa. Commonwealth Ct. 167, 384 A.2d 1382 (1978), this Court applied the rule that where a variance is "de minimis" it may be granted even if the traditional grounds for a variance have not been met.

Taking each one of the dimensional variances involved, on an individual basis, it was not unreasonable for the Board to consider them minor. The proposed deviation from the front set-back requirements occurs only at one corner of the proposed structure, and for

---

[4] This decision was reversed by the Pennsylvania Supreme Court, but on evidential grounds only, in *Petrosky v. Zoning Hearing Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979).

only 30 feet of the 435 foot frontage. The remaining 405 feet frontage either equal or exceed the zoning requirements. It is difficult to imagine how the deviation from the rear set-back requirements can be of any great significance, because the rear property line is a creek, across which is a quarry.

The parking spaces are to be only 5 to 8 feet closer to the right-of-way line for West Chester Pike than is mandated; but at no point will there be a space within 20 feet of the existing curb-line for that road. As to Township Line Road, only 3 spaces come closer to the right-of-way line than is mandated. As to the location of some parking spaces within 20 feet of Philadelphia Electric's property line, that owner went on record as having no objections. While that lack of objection has no compelling legal force, it could properly be considered in determining the significance of that deviation. The bulk variance for the structure leaves 1.9% less open space than is mathematically required, but that can fairly be deemed trivial for a parcel almost 9 acres in size. The reduction in the width of the parking spaces by 1 foot not only seems slight, but also can be considered a consequence of the same topographical factors that reduced the number of parking spaces required from 706 to 513.

As a final matter, the Board found that the subject variances would have no adverse effect on the public health, safety and welfare. We have no basis for disturbing that determination. Having some bearing on that point is the zoning of the other properties surrounding or in the immediate area of parcel in question. *Borough of Latrobe v. Sweeney,* 17 Pa. Commonwealth Ct. 356, 331 A.2d 925 (1975). To the south is a quarry, on land zoned for a shopping center. To the north are properties zoned "Highway Commercial"; also to the north are two other properties zoned for shopping centers. To the east the property is zoned

"Manufacturing and Industrial". And to the west, is a vacant lot zoned "R-4 Residential". It is difficult to imagine how the variances in this case can bring any inharmonious elements to that setting, or create conditions not planned for by Haverford Township when it zoned Chad's property for use as a shopping center in the first place.

Accordingly, for the reasons set forth, we affirm the order of the lower court dismissing the appeal from the Board's decision.

### ORDER

AND Now, the 18th day of June, 1980, it is hereby ORDERED as follows:

1. That the motions of appellees Chad Partnership and Strawbridge and Clothier to quash the above-captioned appeals are denied.

2. That the order of the Court of Common Pleas of Delaware County, dated October 15, 1979, requiring the above appellants to post a bond is reversed (No. 2340 C.D. 1979).

3. That the order of the Court of Common Pleas of Delaware County, dated August 30, 1979, dismissing the appeal from the Zoning Hearing Board of Haverford Township is affirmed (No. 1965 C.D. 1979).

President Judge BOWMAN did not participate in the decision in this case.