B.A.C., Inc. *v.* The Zoning Hearing Board of Millcreek Township et al. The Township of Millcreek, Appellant.

B.A.C., Inc. *v.* The Zoning Hearing Board of Millcreek Township et al. St. Jude's Church, Appellant.

Argued March 12, 1985, before Judges CRAIG and DOYLE and Senior Judge KALISH, sitting as a panel of three.

*Richard W. Perhacs, Elderkin, Martin, Kelly, Messina & Zamboldi,* with him, *Vedder J. White, McClure, Dart, Miller, Kelleher & White,* for appellants.

*James D. McDonald, Jr.,* with him, *George Joseph, Quinn, Gent, Buseck and Leemhuis, Inc.,* and *Lindley R. McClelland,* with him, *Joseph M. Walsh, Jr., McClelland, Brabender and Walsh,* for appellees.

*Robert A. Mills, McNees, Wallace & Nurick,* for Amicus Curiae, Pennsylvania Manufactured Housing Association.

OPINION BY JUDGE CRAIG, May 15, 1985:

In this zoning appeal, we have a question of first impression: Where a zoning ordinance does not list a requested use among the specific use types allowable as special exceptions, may the trial court nevertheless grant special exception approval on the basis that the request complies with the ordinance's general standards governing all special exceptions?

In addition to that key issue, we must review a number of other conclusions whereby the trial court deemed the requested use to be allowable as a permitted use, as a special exception on other theories, and also by way of variance.

We must determine whether the Court of Common Pleas of Erie County, having received additional testimony, abused its discretion or committed an error of law[1] in reversing a decision of the Millcreek Township Zoning Hearing Board which had refused to grant either a special exception or variance with respect to the request of B.A.C., Inc. (BAC) to construct a sixty-unit mobilehome park on land acquired after rezoning had caused BAC's nearby existing mobilehome park to become a nonconforming use.

The basic facts are undisputed. Since 1971, BAC has operated the existing mobilehome park on land north of West Sixth Street and west of Scott Run

---

[1] *Mont-Bux, Inc. v. Township of Cheltenham,* 36 Pa. Commonwealth Ct. 397, 388 A.2d 1106 (1978).

288

creek. After the township had classified all of the land involved in this case as B-Business District—which explicitly permits a wide range of *thirty-seven categories of commercial uses*[2] not including mobilehome parks—BAC in October, 1982 acquired approximately eleven acres of land east of that creek and also north of West Sixth Street, with more than 200 feet of frontage on that street.

After the township zoning officer had rejected BAC's application for a permit to build a sixty-unit mobilehome park on the newly-acquired land east of the creek at an estimated cost of $420,000, BAC appealed to the zoning hearing board to seek a decision

[2] The permitted uses in the B-Business District are:
(1) Any use permitted in "A" Business District; (2) eating and drinking establishments, including private clubs and social halls; (3) beauty parlor; (4) barber shop; (5) hotel or motel; (6) department, variety and dry goods stores; (7) grocery [including convenience] stores, meat and poultry market, fish market, fruit and vegetable market; (8) confection, dairy product and drug stores; (9) bakery; (10) miscellaneous home furnishing store; (11) household appliance store including radio and television stores; (12) office equipment and furnishings, office supply stores; (13) florist; (14) tobacco shop or newsstand; (15) photographic supply store; (16) gift, novelty, souvenir or bookstore; (17) research and development laboratory; (18) mail order houses; (19) direct selling organizations; (20) floor covering and carpet stores; (21) sporting goods store; (22) music store; (23) stationery store; (24) tennis club or courts; (25) drapery and material store; (26) china, glassware, metalware store, jewelry store and antique store; (27) clothing and miscellaneous apparel store, accessory shop, tailor, furrier; (28) furniture store; (29) hardware or paint store; (30) mailing, addressing, duplicating, blueprinting, small print shops, steno service; (31) plumbing and heating store; (32) electric supply store; (33) bicycle shop; (34) locksmith; (35) drive-in restaurants where food and beverages are sold for off-premise consumption; (36) laundromat; and (37) hotel or motel with restaurant.

allowing an alleged "expansion of the nonconforming use," by way of special exception, variance or otherwise.

The board refused the approval, determining that neither the length of frontage on West Sixth Street nor other factors constituted a hardship sufficient for a variance, that the ordinance authorized no special exception for a mobilehome park, and that more than a mere expansion of the nonconforming use was involved because the increase amounted to 100% in terms of number of units and more than 100% in terms of area.

The record reveals that, at about the time of the board's decision, the township rezoned BAC's property to Resort/Business District, which explicitly allows a wide range of *twenty-three categories of commercial and institutional uses*,[3] also not including mobilehome parks. The ordinance permits mobilehome parks in the C-Residence Districts only.

----

[3] The permitted uses in the Resort/Business District are: (1) church, synagogue, temple; (2) state licensed or approved school or college; (3) library, museum, gallery; (4) apartments, condominiums, rental cottages, [excludes mobile home parks which are permitted in "C" Residence only]; (5) hotels, motels; (6) arenas, auditoriums, assembly and meeting halls; (7) township licensed campgrounds and travel trailer parks; (8) public swimming pools, beaches; (9) boating facilities, marinas, rental, repair and sale of boats; (10) fishing facilities and sale of fishing equipment and live bait; (11) country clubs; (12) baseball fields, basketball courts, golf courses, driving ranges, biking and hiking trails, miniature golf facilities, bicycle sales and rentals, bowling alleys, tennis clubs or courts, racquetball facilities, skating rinks, hunting and fishing clubs, soccerfields, skiing facilities, bocci fields, physical fitness courts; (13) eating and drinking establishments, restaurants, taverns, drive-in restaurants; (14) theatres, movie houses, excluding drive-in theatres; (15) auto rentals, gasoline service stations; (16) dance halls, amusement

BAC's appeal to the common pleas court, like its appeal to the board, apparently recognized that its proposal did not constitute a permitted use either in B-Business District, the classification in effect at the time of its application, or in the Resort/Business District; the notice of appeal sought the grant of a special exception or a nonconforming use expansion approval.

The trial judge concluded in his adjudication that the proposed expansion met all of the general criteria established by section 1008 of the zoning ordinance for the granting of special exceptions. He rejected the township's contention that a special exception was nevertheless unavailable because the ordinance does not list a mobilehome park as one of the specific uses allowable by way of special exception. In addition, without any finding of hardship, he held that a variance was allowable upon a nonconforming use expansion basis and also upon the basis that the proposed expansion constituted a de minimis deviation from the travel trailer park use allowed under the Resort/Business District classification.

### Permitted Use Interpretations

In the adjudication, the trial judge additionally concluded that the proposed mobilehome park also constituted a permitted use under both the Resort/

parks, picnic areas, playgrounds and nature parks; (17) fire stations, police stations, post office; (18) general stores, grocery markets, convenience stores, bakeries, farmers markets; (19) artisan and craft shops; (20) retail shops for the sale of gifts, souvenirs, photographic equipment and supplies, pharmaceutical products, sports equipment, beer and liquor, clothing, miscellaneous apparel, flowers, music, hardware, china, glassware, antiques, books, minor appliances; (21) beauty and barber shops, laundromats, financial institutions, dry cleaners, shoe repair, minor appliance repair, locksmith, travel and/or tour agency; (22) medical facilities; (23) and realtors.

Business District provision, which allowed travel trailer parks, and the Mixed Occupancy District classification, which allows "motor courts." Although the trial court's order was confined to granting the special exception and the variance (which would be unnecessary if the proposal were indeed a permitted use), a brief discussion of these permitted use conclusions is necessary to arrive at a logical basis for consideration of the special exception and variance issues centrally involved.

First, as a matter of law we must reject the trial court's conclusion concerning the now-applicable Resort/Business District provisions, that a mobilehome park amounts to a permitted use under the listing for travel trailer parks (recreational vehicle parks). The Resort/Business District provisions, at section 406A-I-4 of the zoning ordinance, expressly exclude mobilehome parks from that district, as being permitted in C-Residence Districts only. As the trial judge recognized, a travel trailer or recreational vehicle park is a different category of use under the ordinance, in that it specifically limits the use of such parks to temporary occupancy by recreational vehicles, as distinct from the relatively permanent occupancy characteristic of mobilehome park use. *The applicant has not challenged the validity of the provisions which limit the travel trailer park designation on the basis of temporary occupancy.* Hence, a mobilehome park clearly is not a permitted use under the current Resort/Business District classification.

Second, because a Mixed Occupancy District is a separate district classification on the zoning map, clearly *not* applicable to the business district land involved in this case, the provision for "motor courts," listed only for the Mixed Occupancy District, is simply not pertinent here. Perhaps misled by the ordinance's definition of "mixed occupancy" as to an individual

building or land parcel, the trial court overlooked the point that "Mixed Occupancy District" does not refer to any and all neighborhoods having a mixture of uses in fact, but is a legislatively-applied district designation on the zoning map, mutually exclusive from the B-Business and Resort/Business District classifications applicable to the land here. Moreover, a mobilehome park is not the same thing as a "motor court," which refers to a *motel*. Webster's Third New International Dictionary, p. 1476.

Therefore, a mobilehome park is not a permitted use in this location. There remain the issues involving the special exception claim and the variance claim.

## Special Exception

The Millcreek Zoning Ordinance is unlike most municipal zoning ordinances in that the articles which describe the respective zoning district categories do not list any group of "Uses Allowable by Special Exception," but enumerate only the uses which are "Permitted Uses" upon an unconditional basis. Section 1008, subdivisions A through E, contains all provisions relating to special exceptions in this ordinance. Nowhere, in that section or elsewhere, does the ordinance list a mobilehome park or its equivalent as an allowable special exception.

Thus, we come to the first impression question stated at the beginning of this opinion.

In this Commonwealth, the concept of special exceptions is rooted in section 913 of the Pennsylvania Municipalities Planning Code (MPC)[4] which states in pertinent part: .

Where the governing body in a zoning ordinance has *stated* special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10913.

hear and decide requests for such special exceptions in accordance with such standards and criteria. . . . (Emphasis added.)

In *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980), a review of special exception cases in the Pennsylvania Supreme Court and in this court led us to summarize the elements of a special exception to be found in zoning ordinances, as follows:

　　1.　The kind of use (or area, bulk, parking or other approval)—i.e., the threshold definition of what is authorized as a special exception;

　　2.　Specific requirements or standards applicable to the special exception—e.g., special setbacks, size limits; and

　　3.　Specific requirements applicable to such kind of use even when not a special exception.
. . .

*Id.* at 526, 410 A.2d at 911. From *Derr Flooring Co. v. Whitemarsh Township Zoning Board*, 4 Pa. Commonwealth Ct. 341, 285 A.2d 538 (1972), and other cases, we noted that the governing standards and criteria have been further subdivided into (1) specific requirements and (2) general ones, such as those referring to health, safety, welfare and the intent or purpose of the zoning ordinance.

With that background, we examine the subdivisions of the special exceptions section of the Millcreek Zoning Ordinance, section 1008.

Subdivision A, in its entirety, reads:

A.　The Board may grant or authorize a permit for a use by special exception in accordance with the criteria specified in this Section.

Subdivision B provides, for "all cases of special exception," that the board shall consider "the follow-

ing standards and criteria, which are express conditions for the grant of any special exception.'' Seven criteria, of the sort which *Bray* and *Derr* classified as general, follow: (1) that the use will not be detrimental to the public health, safety and welfare; (2) that the use will not fundamentally alter the character of the neighborhood; (3) that the use will conform to reasonably applicable restrictions other than those that relate to use types; (4) that the use, if near a zoning district boundary, will not be detrimental to the purpose of the adjacent district; (5) that the use, when cumulated with the effect of previous exceptions, will not be inconsistent with the uses permitted as of right; (6) that such cumulative effect will not place a significant additional burden upon public facilities; and (7) that the use will not require significant extension of sanitary facilities.

As noted above, the trial court findings establish, as a given proposition for this case, that the proposed mobilehome park addition would be in conformity with those seven general criteria.

Subdivision C of section 1008 contains the usual authorization for the board to attach conditions to a special exception, and subdivision D imposes the burden of proof, as to compliance with standards and criteria, upon the applicant. *Bray* held that our cases read such an ordinance provision as leaving the burden of persuasion, and also the initial evidence presentation duty, upon the applicant as to specific ordinance requirements, without lifting from objectors their like burden and duty with respect to the general criteria, such as the seven above-described criteria in subdivision B of the ordinance here. In this case, the objecting township obviously has not sustained either that duty or that burden with respect to the general criteria, in view of the affirmative finding that the proposal is in conformity with them.

Hence, if a mobilehome park, by a proper reading of the ordinance, falls within the category of the use types allowable by special exception, the trial court's approval of the exception was well founded.

We therefore turn to the final subdivision of Millcreek Zoning Ordinance's section 1008, subdivision E, which lists the kinds of uses or other matters covered by the special exception power. That subdivision begins with:

> E. In the exercise of its powers the Board may, among other variations and interpretations, authorize a permit to be issued:

The subdivision then enumerates seventeen specific matters, including temporary real estate offices or contractor sheds, properties divided by a zoning district boundary line, lots adjacent to a nonconforming use, enlargement of nonconforming structures, extension of conforming structures, reconstruction of buildings destroyed by fire, resumption of discontinued nonconforming uses, public service corporation structures, variation of area requirements or required yard sizes, and numerous specific uses: aviation field, cemetery, municipal building, community garage, detached private garage, telephone exchange building, and educational or charitable institution.

Although there is no mention of mobilehome parks, the trial court read the general language of subdivision A, that the board "may grant or authorize a permit for use by special exception in accordance with the criteria specified in this Section," as sufficient to cover nonspecified uses, provided the proposal conforms to the general criteria in subdivision B. The trial court could find no requirement in the ordinance or elsewhere that the use sought to be permitted by way of special exception must be expressly provided for in an ordinance.

However, MPC section 913 expressly contemplates that special exceptions be "stated" in the zoning ordinance, along with the express standards and criteria pursuant to which they are to be granted or denied. Without the "threshold definition of what is authorized as a special exception," *Bray*, a zoning board indeed would be able to consider a special exception grant for any kind of use whatsoever, in any district.

Although, as the trial court noted, such a plenary choice by a zoning board could not go beyond the governing standards and criteria, that limitation would be ineffective, particularly when, as here, the general criteria are quite broad. (Ordinance §1008,B). If the zoning hearing board were not confined to designated special exception types, the appointed local board, limited only by general criteria reflecting the same broad policy considerations which govern the enactment of the zoning ordinance itself by the elected officials, could go beyond zoning administration and engage in use selection on its own, under the guise of the special exception power. However, MPC section 913 makes it clear that it is "the governing body" which has the power to state, in the zoning ordinances, the special exceptions to be granted or denied by the board; the MPC does not give the board that power to state which special exceptions are to be permitted under the determinative standards and criteria.

The applicant landowner contends that the opening words of subdivision E, which introduce the seventeen specific special exceptions by indicating that such authorizations are "among other variations and interpretations," thus create a residuary category sufficiently broad to embrace all other uses which satisfy the general criteria for special exceptions. That preface to provisions describing the board's special exception function, governed by MPC section 913, merely recognizes that the zoning hearing board also has

other functions—namely, the power to grant "variations," *i.e.*, variances, under MPC section 912, 53 P.S. §10912, and "interpretations" under MPC section 909, 53 P.S. §10909, embracing appeals to the board where a zoning officer has allegedly "misinterpreted" a zoning ordinance provision or map.

The import of that prefatory phrase is different from the phrase in the Philadelphia Zoning Code's special exception provisions—"use of the same general character" as the permitted uses—which was operative in *Bray*. The Philadelphia phrase defines a finite category, albeit a broad one; it does not reflect the open-ended idea that an appointed board could allow any conceivable use in any district by testing it only against very general standards.

Therefore, with a mobilehome park not listed as an allowable type of special exception, neither the state law nor this ordinance support the trial court's grant of a special exception.

However, the trial court, having not only regarded the proposal as a permitted use and also allowable by way of special exception as a mobilehome park, additionally proceeded to hold that this proposed development is allowable under two nonconforming use expansion situations enumerated in ordinance section 1008E as specific special exception matters. First, the trial court relied upon item 3 of that subdivision, which allows a special exception

3. For the establishment and maintenance of a non-conforming use on a lot adjacent to a lot line the use of which, at the time of passage of this ordinance, does not conform to the regulations herein contained when the existing non-conforming use renders reasonably impractical the improvement of such lot without such modification. . . .

For that provision to be applicable and controlling, the effect of the existing nonconforming mobilehome park would have to be such as to render "reasonably impractical the improvement" of the eleven-acre tract for which permission is sought here. The trial court made no finding that the existence of the former mobilehome park renders impractical the use of the land in question for any of the wide variety of business uses now allowable. Although the trial court did find that the proposed site "is hidden from the main traffic arteries and is nearly surrounded by other mobilehome settlements," the same paragraph of the adjudication concludes that a recreational vehicle park—allowed by the present zoning—would be a practical and consistent use for the site. Hence, although, as the court notes, the township cannot "require" BAC to develop a recreational vehicle park, nevertheless the court's own finding establishes that improvement of the site for that allowed use would not be impractical.

The trial court next relied upon item 4 of subdivision E, a specific special exception listing which allows "reasonably necessary additional structures" for a nonconforming use. However, that item is plainly inapplicable because a whole new sixty-unit additional mobilehome park is clearly something other than "additional structures" reasonably necessary for the original mobilehome park. Nothing in the findings indicates that any aspect of the new mobilehome park is necessary for the continued existence of the present one.

We must therefore conclude that it was an error of law to mandate the grant of a special exception, either for a mobilehome park as such, or for the establishment of an additional mobilehome park on after-acquired land under any of the nonconforming use expansion characterizations in the special exceptions section.

## Change from One Nonconforming Use to Another

In addition to finding the mobilehome park proposal allowable as a permitted use and as a special exception, the trial judge's adjudication, before proceeding to the variance issue, also found the use allowable under section 502 B of the ordinance which allows a "nonconforming use of a building" to be changed to "another non-conforming use of the same or of a more restrictive character, provided no structural alterations are made," other than those authorized for safety. As a matter of law, that provision is inapplicable here. This case does not involve, with respect to the new eleven-acre tract, any change on that tract from one nonconforming use to another. Moreover, structural development obviously *is* extensively involved in this development, estimated to cost $420,000.

## Variance for Nonconforming Use Expansion

Finally, the trial court held that the proposed new mobilehome park addition would be allowable by way of a variance as a nonconforming use expansion. Referring to section 1007 A of the ordinance, the trial court quoted only the provision which gives the board power to grant a variance "in harmony with the general purpose and intent of this ordinance, so that the health, safety and general welfare of the community shall be conserved and substantial justice done." The trial court did not discuss the remaining provisions of that section which, in accordance with MPC section 912, 53 P.S. §10912, further require that, to grant a variance, the board must find that there are unique physical circumstances or conditions which bar conforming development and therefore result in an unnecessary hardship as to the land.

In *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa. Common-

wealth Ct. 183, 446 A.2d 716 (1982), we noted that a variance in the full sense is required to expand a nonconforming use to a portion of property acquired after the enactment of the zoning ordinance which establishes the use as nonconforming, citing *Walter v. Philadelphia Zoning Board of Adjustment,* 437 Pa. 277, 263 A.2d 123 (1970), and *South Philadelphia Dressed Beef Co. v. Zoning Board of Adjustment,* 391 Pa. 111, 137 A.2d 270 (1958).

Here the trial court held that BAC did not have to make the showing of hardship usually required to obtain a variance because the trial judge viewed this proposed expansion as a de minimis deviation from the uses expressly permitted by the Resort/Business District §406A—apparently referring to the travel trailer park provision. However, the de minimis variance cases cited by the court, *Marlowe v. Zoning Board of Haverford Township,* 52 Pa. Commonwealth Ct. 224, 415 A.2d 946 (1980), and *West Bradford Township v. Evans,* 35 Pa. Commonwealth Ct. 167, 384 A.2d 1382 (1978), are not pertinent here. The *West Bradford Township* case involved only an undersized lot which was restricted against any building development whatsoever, and *Marlowe* involved only a small number of feet in linear measure and a departure of less than 2% as to open space, as compared to the proposed development here of a sixty-unit mobilehome park, which is clearly not a de minimis departure.

The few cases dealing with de minimis variances have never supported the granting of such a variance on the theory proffered by the trial court—that the difference in kind and quality between the forbidden use category and the allowable one is so narrow that the court can authorize, by way of variance, a use which the ordinance expressly forbids. So long as the use category established by the local governing body has not been attacked and successfully invalidated, the

courts do not have power to merge or reshuffle the use categories which have been legislated by the local elected officials.

Neither the trial court's opinion nor the evidence in the record discloses any hardship suffered by the new eleven-acre tract, in the proper sense of inability to use that land for any of the many permitted uses. As noted above, the present Resort/Business District ordinance provision allows a great many residential, commercial, retail, service, recreational and institutional uses which are permitted as a matter of right. Also, as noted above, the B-Business District listing, in effect at the time of application, is even broader in allowing a multitude of commercial uses. Witnesses for the landowner, when asked if the property was adaptable to the B-Business uses, acknowledged that it was; the landowner's planning expert witness, when asked if there were uses for the property within the current zoning, answered, "Sure."

Accordingly, because there is no finding as to hardship and there is much more than a de minimis departure involved, to allow the proposal by way of variance would be contrary to law.

We must reverse the decision on all counts.

### ORDER

Now, May 15, 1985, the order of the Court of Common Pleas of Erie County, dated January 12, 1984, is reversed.

