539 A.2d 479

Joseph and Frank Piscioneri *v.* The Zoning Hearing Board of the Borough of Munhall et al. Carol and Michael Balaban et al., Appellants.

Argued October 8, 1987, before Judges BARRY and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Joel P. Aaronson, Reed, Smith, Shaw & McClay,* for appellants, Carol and Michael Balaban et al.

*T. J. Kratzenberg, Kratzenberg & Shields, P.C.,* for appellees, Joseph and Frank Piscioneri.

OPINION BY JUDGE BARRY, March 23, 1988:

Carol and Michael Balaban, among others, (objectors) appeal from an order of the Court of Common Pleas of Allegheny County[1] reversing a decision of the

[1] On June 6, 1986, the trial court appointed a referee to review the record of the proceedings before the Zoning Hearing Board in this case. On June 30, 1986, the appointed referee filed his review of the record and recommended disposition which the trial court accepted and adopted as its opinion.

The intervenors, neighboring landowners in the action, appealed from that order to this Court which is docketed at No. 2282 C.D. 1986 and further, the Board filed a petition for reconsideration with the trial court. The petition for reconsideration was granted following which the trial court issued a new order dated October 31, 1986, reaffirming its order of June 30, 1986. The intervenors have appealed from that order to this Court which is docketed at No. 3413 C.D. 1986. The two appeals have been consolidated for our review.

Zoning Hearing Board of the Borough of Munhall (Board) which denied the application of Frank and Joseph Piscioneri requesting a special exception. We affirm.

Messrs. Piscioneri (landowners) are the owners of a vacant lot on the corner of Main Street and Brierly Lane in the Borough of Munhall. The property is located in a district which is zoned R-2 (residential). The Borough's zoning ordinance, Article VII, Section 1, Table I, permits the following uses in an R-2 residential district: single family dwelling (detached); churches or similar places of worship, parish house, convent; elementary schools, high schools, and institutions for higher education—public and private (non-profit); public parks and playgrounds and other municipal recreation uses; public utility structures necessary for the service of the area, provided that the plans for the design and construction of said structure shall have been approved by the Zoning Hearing Board and that there are no service yards; private garages; professional office (accessory use), provided said office is located in a dwelling and no sign or advertisement is shown other than the name and occupation of the person using said office; customary home occupations, provided that there shall be no external evidence of such occupations except a small professional sign not exceeding one (1) square foot; cemetery and the necessary incidental structures upon approval of the Zoning Hearing Board and subject to

---

We must note that the notice of appeal docketed at No. 2282 C.D. 1986 was rendered inoperative following the grant of reconsideration by the trial court. *See* Pa. R.A.P. No. 1701. Further, we must note that Pa. R.A.P. No. 1701(b)(3), effective January 31, 1987, places the *duty* upon the appellant to file a praecipe with our Prothonotary to strike the notice of appeal following the trial court's grant of reconsideration. No such praecipe was filed in this case. Accordingly, we must sua sponte enter an appropriate order.

such conditions and safeguards as deemed appropriate by such Board and upon the securing of a permit therefor; other customary accessory uses and buildings provided such uses are incidental to the principal use and do not include any activity commonly conducted as a business. Any accessory building shall be located on the same lot with the principal building; signs subject to certain requirements; fences, walls and hedges subject to certain requirements; other permitted obstructions subject to certain requirements; off-street parking subject to certain requirements; and nonconforming uses subject to certain requirements.

The landowners submitted plans for a building to include two floors of office space and a barber shop. When their application for a building permit was denied they sought a variance from the Board. Their request for a variance was denied.

Following the denial of their variance request the landowners sought a special exception from the Board. The pertinent provisions of the Munhall Zoning Ordinance with respect to special exceptions are as follows:

*Article IV, Definitions*

*Special Exceptions*—A use that would not be appropriate generally or without restriction throughout a zoning district but which, if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare. Such uses may be permitted in such zoning districts as special exceptions, if approved by the Zoning Hearing Board in accordance with the provision of this ordinance.

*Article VII, Section 1. Permitted Uses in Residential Districts*

Permitted uses in the various residential districts are indicated under the appropriate district in the following table, Table I,[2] PERMITTED USES IN RESIDENTIAL DISTRICTS. Specific uses, not included, but related or equivalent to a listed use may be permitted, subject to interpretation and approval by the Zoning Hearing Board. [Footnote added.]

*Article XIII, Section 6. Special Exceptions*

(1) The Zoning Hearing Board shall hear and decide upon Special Exceptions; however, it shall not approve a Special Exception unless and until;

(a) a written application for a special exception is submitted to the Office of the Building Inspector indicating the section of this ordinance under which the special exception is sought and stating the grounds on which it is requested.

(b) the required fees are paid. . . .

(c) notice shall be given at least fifteen (15) days in advance of public hearing. The owner of the property for which special exception is sought or his agent shall be notified by mail. Notice of such hearings shall be posted on the property for which special exception is sought, at the Borough Building and in one other public place at least fifteen (15) days prior to the public hearing.

(d) The public hearing shall be held. Any party may appear in person, or by agent or attorney.

(e) a copy of the application for the Special Exception shall be submitted by the Office of

---

[2] See recitation above of permitted uses in an R-2 residential district as extracted from Table I.

the Building Inspector to the Borough Planning Commission. The Commission shall review and make recommendations thereon, and shall submit said recommendations to the Zoning Hearing Board.

(2) If it is found by the Planning Commission[3] and the Zoning Hearing Board that the Special exception will not adversely affect the public interest in any way, the Special Exception shall be granted by the Zoning Hearing Board. [Footnote added.]

(3) In granting any special exception, the Zoning Hearing Board may prescribe appropriate conditions and safeguards in conformity with this ordinance. . . .

Following a hearing on October 22, 1984, the Board denied the owners' request for a special exception. The Board reasoned that since the ordinance does not specifically list any special exceptions for the R-2 residential district the landowners did not comply with the requirements of Article XIII, Section 6(1)(a) as restated above. Further, the Board reasoned that the only arguable special exceptions permitted in the R-2 residential district are public utility structures and cemeteries inasmuch as they are the only two uses requiring prior Board approval. Finally, the Board reasoned that

---

[3] We should note that although the Planning Commission unanimously approved the landowners' proposed plans in this case the requirement of such an approval for the grant of a special exception has been found to be violative of Section 913 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10913, inasmuch as such a requirement has the "effect [of] precluding an independent judgment by the Zoning Hearing Board which the MPC requires to decide the case." *Heck v. Zoning Hearing Board for Harveys Lake Borough*, 39 Pa. Commonwealth Ct. 570, 579, 397 A.2d 15, 19 (1979).

neither a professional office building nor a barber shop was related or equivalent to any of the uses permitted in the R-2 residential district.

The landowners appealed the Board's decision to the court of common pleas. The neighboring landowner objectors were granted leave to intervene. The appointed referee recommended a reversal of the Board on the basis that its decision was arbitrary, capricious and contrary to the law inasmuch as his review of the record revealed that the landowners had met the criteria necessary for the grant of a special exception under the ordinance and it had not been demonstrated that the proposed use would adversely affect the public in any way. The trial court adopted the referee's recommendation and sustained the landowners' appeal.

Upon the motion of the Board the trial court granted reconsideration of the case for the purpose of examining the applicability of *B.A.C., Inc. v. Zoning Hearing Board of Millcreek Township,* 89 Pa. Commonwealth Ct. 285, 492 A.2d 477 (1985). Following reconsideration the trial court reaffirmed its earlier decision sustaining the landowners' appeal. The objectors then appealed to this Court.

Where, as here, the trial court, in reviewing a zoning appeal has taken no evidence beyond that presented to the zoning hearing board, the Pennsylvania Supreme Court has stated that:

> [T]he scope of our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. 53 P.S. §11010 (1972); 2 Pa. C. S. §754(b). By substantial evidence we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 554-55, 462 A.2d 637, 639-40 (1983).

This case presents us with an interesting combination and variation of the facts and issues in *B.A.C.* and *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980).

The objectors argue that *B.A.C.* is directly applicable to this case requiring a reversal of the trial court. We disagree.

In *B.A.C.* the operative zoning ordinance contained both a provision enumerating specific criteria[4] and a provision containing general language as to the requirements for a special exception.[5] The trial court granted the special exception solely through the application of the general criteria. This Court identified the issue arising out of the factual situation as, "Where a zoning ordinance does not list a requested use among the specific use types allowable as special exceptions, may the trial court nevertheless grant special exception approval on the basis that the request complies with the ordinance's general standards governing all special exceptions?" *B.A.C.,* 89 Pa. Commonwealth Ct. at 287, 492 A.2d at 479. Of course, this question was answered in the negative.

The case before us is clearly distinguishable from *B.A.C.* inasmuch as the Zoning Ordinance of Munhall Borough does not enumerate any specific conditions. Accordingly, the trial court in the case before us was limited to an application of the general criteria set forth in the ordinance.

---

[4] Subdivision E, *see B.A.C.,* 89 Pa. Commonwealth Ct. at 295, 492 A.2d at 482.

[5] Subdivision B, *see B.A.C.,* 89 Pa. Commonwealth Ct. at 293-94, 492 A.2d at 482.

We must now determine whether the special exception language of the Zoning Ordinance of Munhall Borough, though general, nevertheless provides "sufficient control over the Zoning Hearing Board so as not to be capable of selective use under the guise of special exception power. . . ."[6] We agree with the trial court that it does.

The undesirability and effect of zoning ordinances which address special exceptions in only the most general of terms and establishing only general criteria for Board approval are discussed at length in *Bray*. We need not repeat what has already been so well articulated in that case.

The operative language in the zoning ordinance at issue in *Bray*[7] allowed "by [B]oard certificate, a 'use of the same general character' as the uses absolutely permitted in that district." *Bray*, 48 Pa. Commonwealth Ct. at 524, 410 A.2d at 910. In the case before us the operative language is found in Article VIII, Section 1, paragraph 2. "Specific uses, not included, but related or equivalent to a listed use may be permitted, subject to interpretation and approval by the Zoning Hearing Board."

In *B.A.C.*, this Court characterized the operative language in *Bray* as "defin[ing] a finite category, albeit a broad one; it does not reflect the open-ended idea that an appointed board could allow any conceivable use in any district by testing it only against very general standards." 89 Pa. Commonwealth Ct. at 297, 492 A.2d at 483. The same characterization can be made of the operative language in the Zoning Ordinance of Munhall Borough in this case. Accordingly, we cannot find that the trial court's characterization was erroneous.

---

[6] Trial Court Opinion dated October 31, 1986 at 7-8.

[7] Philadelphia Zoning Code.

We must now determine whether the landowners have met their burden of demonstrating their compliance with the specific criteria required for the granting of a special exception. We find that they have.

As noted earlier, the landowners sought a special exception to construct a building containing two floors of professional office space and a barber shop in the basement of the building with its entrance in the rear. Two of the permitted uses in the R-2 residential district are 1) professional offices as accessory uses and 2) customary home occupations. The question before us becomes whether the professional office space and barber shop proposed by the landowners are "related or equivalent to" the professional offices and customary home occupations which are permitted uses in the R-2 residential district. We find that they are, at least, related.

First, professional offices are permitted in the R-2 residential district as an accessory use. The professional offices proposed here would, of course, be a principal, not an accessory use. We do not find that difference to be fatal. The ordinance requires only that the uses be related, not identical. In addition, we note that there was considerable testimony offered at the hearing before the Board that the proposed building has been designed to conform with the residential motif of the surrounding buildings. We find that this effort on the part of the landowners has the effect of making their proposed use even more closely related to a professional office as an accessory use inasmuch as one of the requirements of such accessory use is that it be conducted in a home.

Second, customary home occupations are permitted uses in the R-2 residential district. The ordinance defines a home occupation as:

An accessory use of a service character customarily conducted within a dwelling by the residents thereof, which is clearly secondary to the

use of the dwelling for living purposes and does not change the character thereof or have any exterior evidence of such secondary use other than a small nameplate and in connection therewith there is not involved the keeping of stock in trade. . . . Dancing instruction, band instrument instruction in groups, tea rooms, tourist homes, beauty parlors, real estate offices, convalescent homes, mortuary establishments, and stores, trades or business of any kind not herein excepted shall not be deemed to be Home Occupations.

Again, we find that any reference in the definition of home occupation to an accessory use is not fatal to the proposed barber shop's relationship to the same for purposes of establishing it as a special exception for the same reasons as set forth above with respect to professional offices. Further, we find that the reference to beauty shops not deemed to be home occupations does not have a negative effect on our conclusion that a barber shop is related to a home occupation. In Article VIII, Section 1, Table III the sixth listed permitted use in C-2 and C-3 commercial districts is "Barber or beauty shop." This clearly demonstrates the fact that the writers of the ordinance made a distinction between barber and beauty shops. Had they intended to specifically except barber shops from the definition of home occupation they could easily have done so.

Having found that the proposed professional offices and the barber shop are related to the two permitted uses as discussed above and there being no issues before us as to whether area, yard and height requirements for residential districts have been violated[8] we

---

[8] The objectors request that in the event this Court finds that the Board abused its discretion in failing to grant the special exception that we remand the case for a determination as to whether the

conclude that the trial court did not err in concluding that the landowners have met their burden of demonstrating their compliance with the specific criteria for the granting of a special exception.

Finally, we must determine whether the objectors have met their burden of proving that the proposed use would be detrimental to public health, safety and welfare. We agree with the trial court that they have not.[9]

The primary focus of the testimony presented by the objectors was that the lots in question are located at a heavily traveled intersection. They contend that the presence of commercial activity at the corner would increase the dangerous traffic situation. We agree with the trial court that this evidence is insufficient to meet the objectors' burden. Their testimony does not rise to the level of establishing that the increase in traffic flow would pose a substantial threat to the health and safety of the community. *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 (1957). We find the trial court's conclusion to be particularly compelling inasmuch as the lots upon which the proposed structure is to be built have remained vacant for over forty years. As such they have become a garbage and trash repository as well as a breeding place for rats. Further, one of the *objectors*

---

proposed construction otherwise complies with the zoning ordinance. However, in light of the trial court's order of June 30, 1986, which contains direction to the landowners to so comply and a statement made by the trial court in its October 31, 1986 opinion that the landowners have agreed to so comply, we refuse to remand this case.

[9] We note that the Board made no findings with regard to this issue so its decision is of no assistance. The objectors argue that a remand is in order as to this issue. We disagree. We believe that the objectors have simply failed to meet their burden and are not entitled to a remand for the opportunity to attempt to satisfy that burden a second time.

testified that the grass would often grow as high as thirty-nine inches thereby obstructing her view of oncoming traffic. Given the elimination of these hazards by the erection of a building at the site and the increased tax revenue it would provide, the landowners' proposed use would actually *promote* the health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity or general welfare of the residents in Munhall Borough as required by the zoning ordinance's definition of special exception.

Accordingly, we find that the Zoning Hearing Board committed errors of law in denying the landowners' request for a special exception and affirm the trial court.

ORDER IN 2282 C.D. 1986

Now, March 23, 1988, the notice of appeal docketed at No. 2282 C.D. 1986 of this Court is stricken as being inoperative.

ORDER IN 3413 C.D. 1986

Now, March 23, 1988, the order of the Court of Common Pleas of Allegheny County at No. SA 1675 of 1984, dated October 31, 1986, is hereby affirmed.