Hipwell Manufacturing Company, Appellant *v.* The Zoning Board of Adjustment of the City of Pittsburgh, Tom Mistick and Sons, Inc. and Allegheny West Civic Council, Appellees.

Argued October 7, 1982, before Judges BLATT, CRAIG and MacPHAIL, sitting as a panel of three.

*John H. Bingler, Jr.,* with him *Sheryl L. Anderson, Thorp, Reed & Armstrong,* for appellant.

*D. R. Pellegrini,* for appellee, Zoning Board of The City of Pittsburgh.

*David M. Priselac,* for appellee, Tom Mistick & Sons, Inc.

*Frederick R. Nene,* for appellee, Allegheny West Civic Council.

OPINION BY JUDGE CRAIG, November 18, 1982:

This zoning appeal involves the classic variance issue: Where a zoning board has granted area and yard variances with respect to a permissible multiple-dwelling use, are the variances supported by record evidence demonstrating any unique circumstances of the property which would result in hardship—unusability of the property—if the variances were not granted?

As well summarized by the common pleas court opinion, the landowner's property on Beech Avenue in the Allegheny West neighborhood of Pittsburgh has a width of ninety-two feet and a length of one hundred feet. It is in a district zoned R-4 where the permitted uses include one-family dwellings, two-family dwellings, certain types of row dwellings and multiple-family dwellings. The neighborhood has been classified in the federal register of historic places as the

"Allegheny West Historic District" but is not subject to any historic district zoning under local ordinance or state law.

The landowner has proposed to erect a multiple dwelling containing units for ten families, two and three stories in height, 82 feet long by 48.6 feet wide, with 10 off-street parking spaces.

On appeal to it, the Pittsburgh Zoning Board of Adjustment granted the following variances:

Reduction of minimum lot area per family: 9,200 square feet per family instead of 10,000 square feet per family;

Side yards: 5 feet each instead of 15 feet; and

Rear yard: 7 feet instead of 30 feet.

The only objector was the appellant here, Hipwell Manufacturing Company, whose industrial loading dock facilities are across the alley from the site and who fears vehicular movement interference as a result of the residential parking.

The Zoning Board of Adjustment, in addition to commenting that the seven-foot rear setback amount was developed in order to accommodate the objector, stated as its findings and rationale the following:

Upon consideration of all testimony and inspection of the site by members of the Board, the Board is of the opinion that erection of a 2 and 3 story, 10 unit multiple family dwelling with a 10 car asphalt surfaced parking area in rear with a 7 foot setback from Buttercup Way would not be detrimental to adjacent or abutting properties or to the neighborhood in general and that it would be an undue hardship on Appellant to be denied same.

DECISION—Variances Granted

On appeal by the objector to the common pleas court, the court took no additional evidence and properly recognized the rule that judicial review is limited to a determination of whether the zoning board committed an abuse of discretion or error of law.

Because zoning in the City of Pittsburgh is not governed by the state code applicable elsewhere, the statutory language governing zoning variances in that city of the second class continues to use the Standard Zoning Enabling Act terms, which were first promulgated as a model law in the 1920's, as follows:

> The board of adjustment shall have the following powers:
>
> . . . .
>
> 3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

As translated by the Pennsylvania Supreme Court, "unnecessary hardship" means unusability of the property stemming from "special conditions," meaning unique circumstances of the property. *Michener's Appeal,* 382 Pa. 401, 406, 115 A.2d 367, 371 (1955).

The landowner's brief notes strongly and with undoubted truth that the Allegheny West area, along with the neighboring Manchester area, has been the subject of much praiseworthy community effort, in cooperation with all levels of government, to eliminate blight and achieve restoration, preserving the best of pre-existing architecture remaining from the golden past of the neighborhood as a residential area. Hence, there is some difficulty in generating enthusiasm for the position of the objector, a commercial-industrial

neighbor who opposes new apartment construction in this neighborhood zoned for apartments, for fear of interference with the objector's workaday vehicle movements.

However, before the question of a neighbor's alleged detriment can even be reached, the applicant for the variance has the burden of establishing that there is an unusability hardship resulting from unique circumstances. *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh,* 61 Pa. Commonwealth Ct. 101, 433 A.2d 158 (1981). The common pleas court, at least as to the detriment aspect, appeared to place the burden upon the objector, referring to "the 'high degree of probability' standard necessary to sustain a protestant's burden of proof." However, *Evans v. Zoning Hearing Board of Easttown Township,* 40 Pa. Commonwealth Ct. 103, 396 A.2d 889 (1979), cited for that proposition, is inapposite because *Evans* did not involve a variance; that was a special exception case, in which the burden shifts to the objector.

The signal difficulty here with respect to establishing the basis for the variance is the absence of any finding by the board, and indeed the absence of any evidence in the record, to establish why the property cannot be used for the construction of a multiple-dwelling having fewer than 10 units and a major dimension less than 82 feet. The common pleas court and also the landowner have cited *John R. Greene Associates v. Zoning Hearing Board of Lower Allen Township,* 56 Pa. Commonwealth Ct. 605, 426 A.2d 175 (1981), *Schaaf v. Zoning Hearing Board of Edinboro,* 22 Pa. Commonwealth Ct. 50, 347 A.2d 740 (1975) and *Jacquelin v. Horsham Township,* 10 Pa. Commonwealth Ct. 473, 312 A.2d 124 (1973), all standing for the proposition that dimensional variances can be granted on the basis that unnecessary hardship results where the yard requirements make the construction

of a residence on the property impossible. The key distinction is that each of those cases involved situations in which the yard requirements, without variances, would have prevented the construction of *any* residence on the property. In *Schaaf*, for example, the available buildable area, without a variance, would have been less than 7 feet wide, making the property unusable without a variance. The *Jacquelin* situation was similar, and in *John R. Greene Associates*, we affirmed a variance denial because the applicant did not meet the burden of showing impossibility.

The case on which the landowner most strongly relies is *Upper Moreland Township Board of Commissioners v. Zoning Board of Upper Moreland Township*, 25 Pa. Commonwealth Ct. 626, 361 A.2d 455 (1976), in which we affirmed the grant of variances by a zoning board, not only as to yard requirements, but also to allow a duplex dwelling rather than a single-family dwelling. In *Upper Moreland* we noted that:

> The neighborhood is an old one, where many nonconforming uses with nonconforming lot characteristics exist, including duplexes and commercial establishments. Much of this development occurred prior to the existence of zoning restrictions.

25 Pa. Commonwealth Ct. at 628, 361 A.2d at 456. That description bears some similarity to the situation in the present case.

In *Upper Moreland*, our court's opinion also observed that many cases have acknowledged that "the uses of adjacent and surrounding land may be relevant to the question of hardship." But we added that "the applicant still must show that the property is rendered practically valueless." 25 Pa. Commonwealth Ct. at 630-1, 361 A.2d at 458.

Although we held that a landowner does not have to show that the land could not be sold for the permit-

ted purposes through evidence of an actual attempted sale, we noted that, conversely, the landowner "could not carry his burden of proof by merely offering his personal opinion that a single-family home would not be marketable." 25 Pa. Commonwealth Ct. at 630-31, 361 A.2d at 458.

The present case, of course, involves no variance as to use category. But the great gap here, as to the foundation for a variance, is the absence of any evidence to show that the property could not be used for a multiple dwelling smaller than one consisting of 10 units. The landowner's brief broadly asserts that the lot "cannot realistically be built upon other than as proposed by the Owner." As to record evidence, the landowner's brief can point only to the builder's response to a board member's question as to the reason for the variance, which was as follows:

Project economics is, of course, a basic part of it. . . . We also felt that in trying to develop a building in consonance with the existing and ongoing restoration of the neighborhood, that the requesting a variance for the side yard, one, made the project economically feasible and, two, produced an aesthetic that was in keeping with the neighborhood. . . .

Like the bald assertion in *Upper Moreland* that a single-family home would not be marketable, the above-quoted general statement is not sufficient as evidence that use of the lot in this case for a multiple-dwelling of less than 10 units would be impossible.

We must conclude that the board erred as a matter of law in concluding that the requisite unnecessary hardship was present.

Aside from the alleged detriment to the objector—which we need not pursue because of the conclusion we have been required to reach—we can see that the variances here undoubtedly have been regarded as

rather wholesome ones in civic terms. However, the reason that the statute has established, and the courts have supported, firm and sometimes doctrinaire standards for granting variances is that the policy decisions in connection with land use should be left to the elected officials. Courts, as well as zoning boards, are under compulsion to avoid legislating even minor amendments to the zoning ordinances, disciplining themselves to act only within the framework of predictable rules which can be well understood and consistently followed.

### ORDER

Now, November 18, 1982, the order of the Common Pleas Court of Allegheny County dated September 16, 1981 is reversed and the decision of the Zoning Board of Adjustment of the City of Pittsburgh is vacated.