543 A.2d 1282

George Zaruta et al., Appellants *v.* The Zoning Hearing Board of the City of Wilkes-Barre, and Catholic Social Services of Wyoming Valley, Appellees.

Argued April 19, 1988, before Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*John A. Bednarz, Jr., Silverblatt & Townend,* for appellants.

*Mark A. Ciavarella, Jr.,* for appellee, Zoning Hearing Board of the City of Wilkes-Barre.

*Charles D. McCormick, O'Connor, McCormick & MacDonald,* for intervenor, Catholic Social Services of Wyoming Valley.

OPINION BY JUDGE CRAIG, July 11, 1988:

George Zaruta and others, as objectors, appeal an order of the Court of Common Pleas of Luzerne County which affirmed a decision of the Zoning Hearing Board of the City of Wilkes-Barre granting a use variance to Catholic Social Services (CSS). The variance allowed CSS and an interdenominational organization, Shepherd of the Streets, to establish a permanent shelter for the homeless in a CSS-owned building located in a C-2 district (Commercial, Community) where it is not a permitted use. We reverse the trial court's decision.

The pivotal issue in this case is whether the board's decision to grant the variance is supported by findings which demonstrate any unique physical circumstances or conditions peculiar to the particular property which would result in inability to make a reasonable use of the property if the variance was not granted.

On December 18, 1985, the board held a hearing on CSS's petition for a use variance to permit the establishment of a group care facility in its East Jackson Street building, which also housed the St. Vincent de Paul's Kitchen. Several witnesses in favor of the petition testified that the number of homeless people in the community was growing; that the current Shepherd in the Streets program of providing shelter to the homeless in the basement of volunteer churches was inadequate; and that a permanent overnight shelter was greatly needed. Two witnesses testified against the proposed shelter, expressing fears that the shelter would have a negative impact on their neighborhood. The objectors presented a petition signed by over 100 residents opposed to the shelter. The board decided that it would announce its decision at its next scheduled meeting.

On January 15, 1986, the board voted to grant the use variance, subject to several conditions. The board based its decision on the following findings of fact:

3. The applicant has specifically requested a use variance to permit the establishment of a group care facility in a C-2 zone and also for a waiver of the maximum number of individuals permitted to reside in a group care facility from 8 up to 25, a waiver of the required 27 off-street parking spaces down to 12, and also for a waiver of the required 250 square feet of usable and accessible open space required for the proposed group care facility.

4. The present use of subject property is a restaurant known as the St. Vincent de Paul's Kitchen.

5. Neighboring property owners, represented by legal counsel, appeared at the public hearing to express objection to the proposed use as did others appear to express support of the proposed use.

6. The proposed group care facility would essentially be operated as a shelter for the homeless people of the community and/or perhaps other communities and at the present time would be operated by an organization known as Shepherd of the Streets.

The objectors appealed this decision to the court of common pleas. The trial judge denied the objectors' petition for a supplemental hearing, and affirmed the board's decision to grant the variance.

On appeal, the objectors allege that the trial court and the board erred as a matter of law by holding that CSS had met all legal requirements for a grant of a variance.

Where, as here, the trial court takes no additional evidence, the scope of our review is limited to determining whether the board committed a manifest abuse of discretion or an error of law in granting the variance. We may conclude that the board abused its discretion only if its findings are not supported by substantial evidence. By "substantial evidence" we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 639-40 (1983).

An applicant for a use variance has the burden of proving that (1) the proposed use is not contrary to the public interest and (2) the property involved is subjected to an unnecessary hardship unique or peculiar to the property itself. Unnecessary hardship can be established by either

(1) showing that the physical characteristics of the property are such that it could not be used for a permitted use or that the physical characteristics were such that it could only be arranged for such purpose at a prohibitive expense, or (2) by proving that the characteristics of the area were such that the lots had either no value or only a distress value for any purpose permitted by the zoning ordinance. *Appeal of Nardozza*, 45 Pa. Commonwealth Ct. 482, 405 A.2d 1020 (1979).[1]

Our review of the record indicates that CSS failed to meet the high standards of proof necessary to obtain a use

---

[1] The statute governing a board's review of variance requests is found in section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10912 (in pertinent part):

The board may grant a variance provided the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

variance. The board's findings of fact do not include any findings regarding unique physical characteristics of the property resulting in unnecessary hardship, or that a variance would be necessary to enable reasonable use of the property, or any of the other requirements delineated in MPC section 912. On the contrary, the evidence presented at the hearing showed that the property was currently being used to house the St. Vincent de Paul Restaurant.

In discussing its decision, the board admitted:

After careful reconsideration of the testimony presented at the public hearing and examination of same, it appears both applicant and objectors were somewhat deficient in their attempt to provide substantial facts as to whether a variance is or is not necessary to enable reasonable use of the subject property and whether the proposed use will or will not be detrimental to the health, safety and welfare of the community as applied to zoning law.

The board went on to note that the permanent shelter was a seriously needed service, that the proposed location in the C-2 District was close to services that the shelter would require, and that of all zoning classifications in the city, the C-2 District was the most suitable for this particular use.

Although we understand the board's desire to facilitate the establishment of a shelter for its homeless residents, the board cannot step outside the ordinance and statutory framework to do so. A decision on whether to grant a variance must be based upon the factors set out in section 912, not on the humanitarian goals of the board. The focus of a use variance is primarily upon the physical conditions of the property which make development in accordance with the zoning ordinance impossible or prohibitively expensive, and secondarily on whether the proposed use represents the minimal variance necessary to afford relief, while simultaneously protecting the existing neighborhood

and the public welfare. By focusing on the community's need for a shelter for the homeless, and not addressing the statutory requirements of section 912, the board erred as a matter of law when it granted the requested variance.

This court faced a similar situation in *Lipari v. Zoning Hearing Board of City of Easton,* 101 Pa. Commonwealth Ct. 302, 516 A.2d 110 (1986), where a board granted use, height and yard variances for a proposed high-rise housing development for the elderly. There, the board's findings of fact discussed the desirability of the project, but did not identify any unnecessary hardship which prevented its development within the established zoning limits. In reversing the board's decision, we noted:

> The board also concluded generally that the variances would not be contrary to the public interest, nor detrimental to health, safety and welfare, and that the proposed apartment house would not alter the character of the neighborhood, but, as we stated in Hipwell Manufacturing Co. v. Zoning Board of Adjustment, 70 Pa. Commonwealth Ct. 83, 87, 452 A.2d 605, 606 (1982):

> However, before the question of a neighbor's alleged detriment can even be reached, the applicant for the variance has the burden of establishing that there is an unusability hardship resulting from unique circumstances. Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh, 61 Pa. Commonwealth Ct. 101, 433 A.2d 158 (1981).

*Lipari,* 101 Pa. Commonwealth Ct. at 308, 516 A.2d at 113.

Like the board in *Lipari,* the Wilkes-Barre board here erred by relying on the social desirability of the proposed development, without addressing the statutory requirements of MPC section 912.

Accordingly, the order of the trial court affirming the board's decision is reversed.

## ORDER

Now, July 11, 1988, order of the Court of Common Pleas of Luzerne County, dated March 16, 1987, is reversed.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

The grant of a use variance to the Catholic Social Services of Wyoming Valley (CSS) was reversed by the majority, which focused on the standards of hardship pertaining to the physical characteristics of the property involved. However, a review of the record shows that the essential inquiry to be made in this case is whether the denial of a use variance would result in an unjust invasion of CSS' constitutional right to use the property in the exercise of their religion. In my opinion, because of this constitutional right, it was not even necessary to seek a variance.

The free exercise of religion is a fundamental constitutional right protected by the First Amendment to the U.S. Constitution as applied to the states by the Fourteenth Amendment. U.S. Const. amends. I, XIV.

While the zoning regulation may be within the competence of the municipality to enact, it may not be applied where its effect, even indirectly, is to impede the observance of a religion. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790 (1963).

CSS owned the building involved prior to the present application for a variance. A corner of the building was used by CSS as a soup kitchen known as St. Vincent de Paul's Soup Kitchen, (sometimes referred to as a restaurant) which provided food to the homeless. The remainder of the building was vacant.

Monsignor Donald A. McAndrew, the executive director of CSS testified that for a number of months, as an ecumenical endeavor, the downtown churches of Wilkes-

Barre had been conducting a shelter for the homeless, and each week the shelter would be passed from one church to another. However, the moving of cots and blankets and the lack of proper lavatory facilities presented problems. Notes of Testimony at 77. The program itself was carried out by a group of volunteers from the various churches and is known as Shepherd of the Streets.

CSS sought to coordinate the program on a permanent basis, in the building owned by CSS, and to make structural changes to better accommodate the homeless. The number of homeless is usually between twenty-five to thirty people per evening. The various churches cooperating in this ecumenical endeavor were asserting the fundamental tenet of their religion, which is to minister to the poor and homeless through this facility. The fact that they sought a variance to accomplish this purpose is not the real issue.

The majority relies on the "similar situation" in *Lipari v. Zoning Hearing Board of Easton*, 101 Pa. Commonwealth Ct. 302, 516 A.2d 110 (1986). However, in *Lipari* there was no issue involving the constitutional right to the practice of religion, as the applicant in *Lipari* was a nonprofit developer. This qualitative difference clearly distinguishes the two cases.

The next question is whether some compelling local interest justifies the substantial infringement of CSS' first amendment right. The Board concluded that the granting of the variance will not in any way be detrimental to the health, safety and welfare of the community, and will be operated in a manner consistent with the intended character of the neighborhood. There was nothing to show that such zoning restrictions served a compelling governmental interest. Thus, the refusal to permit the operation of a shelter for the homeless, in this situation, places a burden upon those practicing the free exercise of religion. It effec-

tively penalizes CSS for such exercise and suppresses the constitutionally protected freedom of religion.

I would reinstate the order of the common pleas court, which affirmed the Board's decision, for the reasons set forth in this opinion.