556 A.2d 981

Beecham Enterprises, Inc., Appellant *v.* Zoning
Hearing Board of Kennedy Township and Motel
Six, Inc., Appellees.

Argued February 10, 1989, before Judges BARRY and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Joel P. Aaronson, Reed, Smith, Shaw & McClay,* for appellant

*Frederick A. Boehm, Goehring, Rutter & Boehm,* for appellee, Motel Six, Inc.

OPINION BY SENIOR JUDGE NARICK, April 7, 1989:

Beecham Enterprises, Inc. (Beecham) appeals from an order of the Court of Common Pleas of Allegheny County which dismissed Beecham's appeal challenging the Kennedy Township Zoning Hearing Board's (Board's) grant of sign dimensional variances to Motel Six, Inc. (Motel Six), Beecham's immediate neighbor.

Motel Six is the owner of a four-acre parcel (Motel Six Property) located at the intersection of Beecham Drive and Kisow Drive in Kennedy Township, Allegheny

County, Pennsylvania. Beecham owns a sixteen-acre parcel (Beecham Property) where its corporate headquarters are located and which is directly across Beecham Drive from the Motel Six Property.

Both the Motel Six Property and the Beecham Property are located in an R-4 zoning district, a district permitting a mix of residential and commercial uses.[1]

On May 15, 1986, Motel Six filed an application with the Board seeking dimensional variances from the sign provisions of the Zoning Ordinance.[2] The variance hear-

---

[1] The Kennedy Township Zoning Ordinance (Ordinance) provides that in the R-4 zoning district (or planned unit development) that the following business uses may be permitted:

437.1. Retail stores.

437.2. Business offices.

437.3. Hotels, motels.

437.4. Religious institutions.

437.5. Community centers.

437.6. Indoor and outdoor recreation.

437.7. Personal services.

437.8. Enclosed accessory uses—an accessory use being defined under Ordinance.

437.9. Parking.

437.10. Other uses approved by the Planning Commission and the Board of Commissioners.

[2] The ordinance provides that in "R" Districts, which includes the R-4 district, the following signs shall be permitted and the following regulations shall apply:

1000.1. One (1) identification sign for a multi-family dwelling or a home occupation. When for a multi-family dwelling, not to exceed twelve (12) square feet; when for a home occupation, not to exceed one and one-half (1 1/2) square feet.

1000.2. One (1) bulletin board per street for church or similar place of worship, each not to exceed thirty (30) square feet.

1000.3. Temporary unlighted real estate sign, not to exceed thirty (30) square feet.

1000.4. Directional sign, not exceeding one and one-half (1 1/2) square feet.

ing was advertised in a local newspaper, but no notice of the hearing was posted on the Motel Six Property.[3] On July 24, 1986, the Board conducted a hearing (first hearing) in connection with the Motel Six variance application for two signs, including a 320 square foot sign, which is 30 times larger than normally allowed in an R-4 zoning district. The Board approved the requested variance and eight months later on March 18, 1987, Motel Six commenced installation of the signs.

1000.5. In connection with a parking facility, directional signs not to exceed eight (8) square feet each.

1000.6. Traffic control signs installed and maintained by the Municipality, County of Allegheny, Commonwealth of Pennsylvania or any governmental authority.

1000.7. Any use other than specified in Paragraphs 1000.1-1000.6 herein, not to exceed twelve (12) square feet per principal building or use.

1000.8. Billboards are specifically prohibited in any 'R' District.

1000.9. All signs in any 'R' District shall be non-flashing and non-animated; those not attached to a building shall be set back at least fifteen (15) feet from lot or street line; and no sign shall project above the roof or be mounted on a building above the eave line of a roof.

[3] Section 908(1) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10908(1) provides that:

The board shall conduct hearings and make decisions in accordance with the following requirements:

(1) Notice shall be given to the public, the applicant, the zoning officer, such other persons as the governing body shall designate by ordinance and to any person who has made timely request for the same. Notices shall be given at such time and in such manner as shall be prescribed by ordinance or, in the absence of ordinance provision, by rules of the board. The governing body may establish reasonable fees, based on cost, to be paid by the applicant and by persons requesting any notice not required by ordinance. In addition to the notice provided herein, notice of said hearing shall be conspicuously posted on the affected tract of land.

Eighteen days after installation of the signs, Beecham filed an appeal to common pleas court at SA 679 of 1987 (initial appeal) challenging the substantive validity of the Board's grant of the variance and seeking to void the Board's decision since the notice of the first hearing was not posted. Motel Six was served with Beecham's notice of appeal, but did not intervene as of right.[4] This appeal resulted in a consent order, whereby Beecham and the Board consented to remand the proceedings. The purpose of the remand was to conduct a hearing *de novo* relative to the variance application of Motel Six since the first hearing had been improperly noticed.

On September 3, 1987, at the remanded hearing (remand hearing) Motel Six again presented evidence as to the necessity of the variance. Beecham, now present at the remand hearing, presented testimony that the sign "significantly adversely impacted not only the value of Beecham's $12 million facility, but also its amenity and image critical to its use as a corporate headquarters given the business expectations of customers and employees alike."[5] (Brief at 22.) Beecham submitted that the variance authorizing the sign 30 times larger than permitted altered the essential character of the district where permitted uses include residences, schools and religious

---

[4] Section 1009 of the MPC, 53 P.S. §11009 provides that:

Within thirty days first following the filing of a zoning appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention, accompanied by proof of service of the same upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Rules of Civil Procedure.

[5] Beecham also presented testimony that their corporate image which promotes such nationally known products as Aquafresh, Massengill Feminine Products and Sucrets would be affected by the Motel Six sign.

institutions. No other interested property owners objected to the variance.

After the remand hearing, the Board again approved Motel Six's requested variance.[6] On September 28, 1987, Beecham appealed to the common pleas court at SA 2131 of 1987 the Board's order which again granted the variance. On February 5, 1988, by order of court, Motel Six's Petition to Intervene was granted. On March 26, 1988, the trial court, without taking additional evidence, dismissed Beecham's appeal at SA 2131 of 1987. This appeal then followed.

Our scope of review where a trial court took no additional evidence in reviewing a decision of a zoning hearing board is limited, as was the trial court, to a determination of whether the Board abused its discretion, or committed an error of law. *Valley View Civic Association v. Zoning Hearing Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *Lamb v. Zoning Hearing Board of Adjustment, Borough of Ambridge*, 111 Pa. Commonwealth Ct. 534, 534 A.2d 577 (1987).

The issues before us are: 1) whether the statutory appeal period, after the first hearing, had expired; 2) whether Motel Six, by failing to intervene at the first appeal, waived its right to intervene at SA 2131; and 3) whether the trial court erroneously held that Motel Six had acquired vested rights instead of determining whether the variance had been properly granted by the Board.

The first issue we must address is whether the trial court at the initial appeal had jurisdiction to remand the

---

[6] On July 6, 1987, Beecham filed another appeal at SA 1332 of 1987 alleging entitlement to a deemed decision because the Board failed to hold a hearing on its request within sixty days. This appeal was dismissed as moot since the remand hearing had already taken place.

case to the Board since the statutory appeal period had expired.

As an intervening party here, Motel Six argues as did the Board in the initial appeal, that the initial trial court was without jurisdiction due to the untimely appeal. We agree that a trial court, hearing an untimely appeal, is normally without jurisdiction, *Hanna v. Zoning Board of Adjustment of Pittsburgh*, 62 Pa. Commonwealth Ct. 620, 437 A.2d 115 (1981), but such limitation does not apply if the party proves that he had no notice of the Board's proceedings.[7] According to Section 908(1), notice of said hearing must be published and conspicuously posted on the affected tract of land. *Eaton v. Zoning Hearing Board of Borough of Wellsboro*, 80 Pa. Commonwealth Ct. 392, 471 A.2d 919 (1984). Notice of the first hearing was not posted.

Motel Six also argues that since the initial trial court had no jurisdiction, this made the remand hearing to the Board and the appeal which followed at SA 2131 of 1987, also to be without jurisdiction. Since we find the original appeal was timely filed, this argument, too, is meritless.

---

[7] Beecham erroneously argues that its appeal was timely filed pursuant to Section 915 of the MPC, 53 P.S. §10915, which states that "[n]o person shall be allowed to file any proceeding with the *board* later than thirty days ... unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval has been given." This appeal, from a board decision to a court, is governed by 42 Pa. C. S. §5571(b), which provides that the appeal *must be commenced within thirty days after the entry of the order* from which the appeal is taken. Because Beecham knew nothing of the entry of the order, it was unable to notify the Board of its address, as required, so that the Board could send notice of the grant of the variance. This fact and the requirement under Section 908(9) of the MPC, 53 P.S. §10908(9), that the municipality shall give public notice of any deemed decision in favor of an applicant requires us to find that Beecham's appeal was timely filed.

The next issue we must address is whether Motel Six by failing to intervene at the initial appeal, waived its right to intervene at the appeal at SA 2131 of 1987.[8]

The record reveals that the remand order signed by the trial court at the first appeal was consented to by both Beecham and the Board. Because Motel Six was the party requesting the variance, it is obvious Motel Six would present itself at the remand hearing. Beecham, by consenting to this remand order, in fact, waived any objection as to Motel Six being present at the remand hearing. Motel Six then properly petitioned the trial court to intervene at SA 2131 of 1987.

Additionally, neither Beecham's Notice of Appeal filed with the trial court after the second hearing nor the record of the second hearing raise as an issue Motel Six's failure to intervene at the initial appeal as waiver of its right to intervene here.

In *813 Associates v. Zoning Hearing Board of Springfield Township*, 84 Pa. Commonwealth Ct. 420, 479 A.2d 677 (1984), this Court held that an appellant could not introduce a new theory of relief on appeal that was not previously presented. In *813 Associates*, the Court states that the "doctrine of waiver has become firmly entrenched in Pennsylvania law and it is clear that on appeal a new and different theory of relief may not be successfully advanced for the first time." *Id.* at 425, 479 A.2d at 680, *citing Morgan v. Sbarbaro*, 307 Pa. Superior Ct. 308, 311, 453 A.2d 598, 599 (1982).[9] Thus, failure to raise an

---

[8] Beecham argues, in fact, that this intervention is an impermissible attempt to collaterally attack the initial appeal. The cases cited by Beecham for this proposition are unpersuasive and inapplicable.

[9] Although Section 1009 permits intervention by the property owner as of course within thirty days, it also provides that all other intervention be governed by the Rules of Civil Procedure. Pa. R.C.P. No. 2327 permits a person to intervene *at any time during the pendency* of the action. Motel Six petitioned the trial court at the

issue on appeal precludes the raising of such issue later. *Grove v. Zoning Hearing Board of Thornbury Township*, 40 Pa. Commonwealth Ct. 47, 397 A.2d 22 (1979).

Even if we were to consider Beecham's waiver argument, the cases it cites are not persuasive. Beecham first relies upon *Gilchrist v. Zoning Hearing Board of Old Forge Borough*, 83 Pa. Commonwealth Ct. 27, 475 A.2d 1366 (1984), which merely stands for the proposition that a protestant before a zoning board is not given automatic party standing before the court of common pleas and must petition to intervene. Beecham then argues that *Babyak v. Zoning Hearing Board of Washington Township*, 115 Pa. Commonwealth Ct. 322, 539 A.2d 961 (1988), is applicable. In *Babyak*, landowners were granted a variance which was later reversed on appeal by neighbors. The landowners failed to intervene in the action before the trial court until well after that court had issued its final order. We then quashed the landowners' appeal to this Court as untimely. Although Motel Six was at risk by failing to intervene at the first appeal, as were the landowners in *Babyak*, the trial court's remand to the Board gave Motel Six the opportunity to properly intervene.

Beecham's final argument is that the trial court opinion at SA 2131 of 1987 was erroneous as a matter of law. Judge FARINO determined that Motel Six was not required to prove the sufficiency of the requested variance because Motel Six had acquired a vested right in the variance. We do not agree.

---

second appeal to intervene and the petition was granted. In *Patane v. Warwick Township Zoning Board of Adjustment*, 18 Bucks Co. L. Rep. 583 (1968), a special exception case, the court held that intervention was permitted by affected parties in the following situations: (1) after the special exception has been denied, (2) an appeal has been taken, (3) *the case has been remanded for further hearing*, and (4) the zoning board, on further hearing, has granted the special exception.

Following the remand hearing the Board made the following pertinent findings of fact:

8. In addition to Motel 6, there are two other motels at Exit 16.

9. The other two motels have signs erected on their premises much larger than 12 square feet.

10. Motel 6 significantly depends upon visual identification by way of signage to advise the travelling public of its existence.

11. The competition among the motels at Exit 16 for customers is *keen*, and the majority of Motel 6's business is produced as a result of observance of an identification sign.

12. *The site would not have been acceptable* to Motel 6 *for motel usage* without a sign of at least 320 square feet, erected upon a 50 foot pole.

\* \* \* \*

20. Motel 6 occupies its property pursuant to the terms of an approved planned unit development application for a motel, as do the other two motels in this area.

21. The topography and unique physical setting of Motel 6's property; namely, that it is located on the side of a hill as part of a small valley through which State Route 60 runs, off a public street that runs down to State Route 60, and that a large pre-existing structure in front of Motel 6's building, makes it very difficult for Motel 6 to operate a motel with signage limited to 12 square feet. (Emphasis added.)

The Board also made the following "conclusions of law":

4. In the R-4 district, the purpose of development is to provide for rezoning of land to residential and commercial development zones, consis-

tent with the provisions and general intent and in conjunction with the Zoning Ordinance.

5. By approving a series of uses on the property of Motel 6, Beecham and all real estate contiguous thereto and visible thereupon to a radius of at least 2800 square feet, a commercial development zone consistent with C-2 usage exists.

6. The topography of Motel 6's property and its *unique physical characteristics are such that a sign of 12 square feet* as is referred to in 'R' districts *is wholly inadequate*, invisible and useless. These factors are not self-inflicted by the applicant.

7. The *lack of adequate signage* for Motel 6's property *creates a direct hazard to the public safety* in that the travelling public will not be able to properly see the sign on Motel 6's property creating the clear and present danger of serious vehicular accidents, since the property of Motel 6 is situate at the intersection of an interstate highway and a four-lane, divided state highway. Additionally, the topography of the area and the structures erected there before Motel 6 erected its structure creates and contributes to this hazardous condition, and all of these are conditions over which Motel 6 had no control, and which are not self-inflicted.

\* \* \* \*

10. The Zoning Board finds that granting this variance will have no adverse impact on the public health, safety and welfare and will alleviate the public danger caused by inadequate signage. (Emphasis added.)

Beecham's appeal which was based upon the contention that the Board's findings were not supported by

substantial evidence was dismissed by Judge FARINO, who without taking additional evidence, held that an examination as to the sufficiency of the variance evidence was not necessary because Motel Six had acquired a vested right in the variance, and the appeal was controlled by *Petrosky v. Zoning Hearing Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979).

Judge FARINO cites *Petrosky*, where the Supreme Court established five criteria to acquire vested rights in a permit issued erroneously: 1. Due diligence in attempting to comply with the law; 2. Good faith by the landowner throughout the proceedings; 3. Landowner's expenditure of substantial unrecoverable funds; 4. *Expiration of the appeal period absent an appeal*; and 5. Insufficient evidence of adverse effect on the public health, safety, or welfare.

Motel Six failed in meeting the requirement of *Petrosky* which necessitates the expiration without appeal, of the period during which an appeal could have been taken from the issuance of the permit. Because the first hearing was improperly noticed, Beecham was unable to appeal the grant of the variance until after it received notice, that being upon the erection of the sign. The appeal period, not having expired, defeats this requirement in *Petrosky*.

The law is quite clear that the holder of a permit cannot acquire vested rights prior to the expiration of the appeal period, and that any expenditures made prior to such expiration are at the permit holder's risk, *Minnick v. Zoning Hearing Board, Town of McCandless*, 71 Pa. Commonwealth Ct. 333, 455 A.2d 243 (1983).

We would like not to subject Motel Six to a disadvantage because of the official negligence, which lengthened the appeal period. However, Beecham is equally innocent of any wrongdoing. Therefore, we must view the original appeal as timely filed and refuse to apply *Petrosky*.

Because we find that the trial court erroneously concluded that Motel Six had acquired a vested right in the variance, we must now determine since the trial court failed to do so, if the Board abused its discretion in granting the variance. The reason for granting a variance must be substantial, serious and compelling. *Valley View*. A board abuses its discretion if its findings of fact are not supported by substantial evidence. *Id*. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

An applicant for a variance must prove that (1) the proposed use is not contrary to the public interest, and (2) the property involved is subjected to an unnecessary hardship, unique or peculiar to the property itself. *Zaruta v. Zoning Hearing Board of City of Wilkes-Barre*, 117 Pa. Commonwealth Ct. 526, 530, 543 A.2d 1282, 1284 (1988). Unnecessary hardship is demonstrated by demonstrating (1) the physical characteristics of the property are such that it could not be used for a permitted use; (2) that the physical characteristics could only meet the requirements established for a permitted use at a prohibitive expense; or (3) that the characteristics of the area were such that the lots had either little or no value for *any* permitted use. *Appeal of Nardozza*, 45 Pa. Commonwealth Ct. 482, 405 A.2d 1020 (1979).[10]

---

[10] The statute governing a board's review of variance requests is Section 912 of the MPC, 53 P.S. §10912, which states in pertinent part that:

The Board may grant a variance provided the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions,

Our review of the record indicates that Motel Six failed to meet the high standards of proof necessary to obtain a use variance. The Board's findings of fact do not include any findings regarding unique physical characteristics of the property resulting in unnecessary hardship. The only indication of unnecessary hardship with respect to the land itself, is Motel Six's belief that without the sign variance, it could not compete with the other motels in the vicinity.

In *Lipari v. Zoning Hearing Board, City of Easton,* 101 Pa. Commonwealth Ct. 302, 516 A.2d 110 (1986), we reversed the Board's grant of a height variance to a nursing home. There, the applicant contended that the physical characteristics of the property denied its use for a home for the elderly if the building was required to be of lesser height. However, we found there was no evidence that the physical characteristics of the property denied its use for those purposes which the ordinance permitted.

---

and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

    . (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will present the least modification possible of the regulation in issue.

Motel Six introduced no evidence that the physical characteristics of the property are such, that the land could not be used for a permitted use. *Hipwell Manufacturing Company v. Zoning Hearing Board of Adjustment*, 70 Pa. Commonwealth Ct. 83, 452 A.2d 605 (1982). Sign or no sign, a motel can exist on the property. The testimony that due to the contour of the land a twelve foot sign would not be visible enough to attract customers, does not demonstrate that the property has little or no value for any permitted use.

Motel Six did not present evidence that the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Lipari.*

The record does not establish that Motel Six created the hardship or that the sign would alter the character of the zoning district, but, it does fail to establish that the 320 foot sign would represent the minimum variance which would afford relief.

The Board made some relevant findings but, such evidence " 'is not conclusive *absent a showing that the property is rendered practically valueless as zoned.' " Valley View.* (Emphasis in original.) (Citation omitted.) We have found no evidence that the property cannot be used for any permitted use or that the property has been rendered nearly valueless.[11]

Accordingly, we reverse the Court of Common Pleas of Allegheny County.

---

[11] Motel Six argues that the ordinance does not address the signage requirements in an R-4 (PUD) district. This argument is meritless because all R districts are included in the ordinance. Also the Board's Conclusion of Law No. 8 that the "inadequate signage . . . creates a direct hazard to the public safety" is not supported by substantial evidence.

## ORDER

AND NOW, this 7th day of April, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.